Ray MARSHALL, Secretary of Labor, Petitioner,

v.

UNION OIL COMPANY OF CALIFORNIA, and Occupational Safety and Health Review Commission, Respondents.

No. 78–2002.

United States Court of Appeals, Ninth Circuit.

April 7, 1980.

Charles I. Hadden, U. S. Dept. of Labor, Washington, D. C., for petitioner; Eric W. Cloud, Washington, D. C., on brief.

W. Carl Jordan, Vinson & Elkins, Houston, Tex., for respondents; William A. Jones, Jr., Houston, Tex., on brief.

Before KENNEDY and TANG, Circuit Judges, and SCHWARTZ,* District Judge.

SCHWARTZ, District Judge.

The Secretary of Labor petitions for review of a final order of the Occupational Safety and Health Review Commission (OSHRC) vacating a citation against UNION OIL COMPANY for violation of regulations promulgated under the Occupational Safety and Health Act (OSHA), Pub.L. 91–596, 29 U.S.C. §§ 651, et seq.

Specifically, the citation at issue here alleged a serious violation of § 5(a)(2) of the Act and of 29 C.F.R. § 1910.28(a)(3) which

---

* Honorable Edward J. Schwartz, United States District Judge, Southern District of California, sitting by designation.

requires the installation of guardrails and toeboards on all open platforms more than ten feet above the ground or floor.[1] The citation resulted from an investigation into the death of a Union Oil Company employee who fell from a platform more than ten feet in height from which the midrail had been removed. The Secretary served a proposed monetary penalty and ordered UNION OIL to abate the condition by June 10, 1976. UNION OIL timely contested the citation pursuant to 29 U.S.C. § 659(c). The Secretary's formal complaint and UNION OIL's answer followed.

The case was heard by an OSHRC administrative law judge. UNION OIL defended on the sole ground that the standard was improperly promulgated and therefore invalid. The administrative law judge issued a decision in which he vacated the Secretary's citation alleging the § 1910.28(a)(3) violation on the ground that the regulation was void because it had been improperly promulgated. The Secretary petitioned the OSHRC for discretionary review. No Commissioner, however, directed review, and the administrative law judge's decision became the final order of the Commission.

The Secretary's petition to this court to review the decision followed on May 5, 1978.

After considering the briefs and the record filed herein, and after hearing oral argument, we affirm the decision of the administrative law judge.

I.

■ On April 28, 1971, OSHA became effective. The Act was expressly passed "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions". This objective was to be achieved in part "by building upon advances already made through employer and employee initiative for providing [such] conditions." 29 U.S.C. §§ 651, 651(4). OSHA Section 6(a) provided a summary procedure for implementing these statutory goals by directing the Secretary "as soon as practicable" to promulgate as an occupational safety or health standard "any national consensus standard . . . unless he determines that the promulgation of such a standard would not result in improved safety or health for specifically designated employees." 29 U.S.C. § 655(a).[2]

---

1. Section 5(a)(2), 29 U.S.C. § 654(a)(2), requires each employer affecting commerce to "comply with occupational safety and health standards promulgated under this chapter." 29 C.F.R. § 1910.28(a)(3) provides:
   (a) General requirements for all scaffolds.
   \* \* \*
   (3) Guardrails and toeboards *shall* be installed on all open sides and ends of platforms more than 10 feet above the ground or floor . . . [Emphasis added.]
   Section 17(k) of the Act, 29 U.S.C. § 666(j), defines a "serious" violation as one which creates a
   substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

2. Section 6(a), 29 U.S.C. § 655(a) provides:
   Without regard to chapter 5 of Title 5 or to the other subsections of this section, the Secretary shall, as soon as practicable during the period beginning with the effective date of this chapter and ending two years after such

date, by rule promulgate as an occupational safety or health standard any national consensus standard, and any established Federal standard, unless he determines that the promulgation of such a standard would not result in improved safety or health for specifically designated employees. In the event of conflict among any such standards, the Secretary shall promulgate the standard which assures the greatest protection of the safety or health of the affected employees.
   Section 3(8), 29 U.S.C. § 652(8) defines an "occupational safety and health standard" as a standard which "requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment."
   Section 3(9), 29 U.S.C. § 652(9) provides that a "national consensus standard" is
   any occupational safety and health standard or modification thereof which (1) has been adopted and promulgated by a nationally recognized standards-producing organization under procedures whereby it can be determined by the Secretary that persons interested and affected by the scope or provisions of the standard have reached substantial agree-

The section 6(a) power expired by its own terms on April 28, 1973, two years after the Act's effective date. *Id.*

The Senate Report on the bill finally enacted states:

> During this two-year period, the Secretary has discretion to promulgate any standard which has been adopted by a nationally recognized standards-producing organization . . .
>
> The purpose of this procedure is to establish as rapidly as possible national occupational safety and health standards with which industry is familiar. These standards may not be as effective or as up-to-date as is desirable, but they will be useful for immediately providing a nationwide minimum level of health and safety. Two private organizations are the major sources of consensus standards: the American National Standards Institute, Inc., and the National Fire Protection Association. Since, by the Act's definition, a "consensus standard" is one which has been adopted under procedures which have given diverse views an opportunity to be considered and which indicate that interested and affected persons have reached substantial agreement on its adoption, it is appropriate to permit the Secretary to promulgate such standards *without regard to the provisions of the Administrative Procedure Act.* [Emphasis added.]

Senate Report No. 91–1282 *reprinted at* 1970 U.S.Code Cong. & Admin.News, pp. 5177, 5182. Any standard other than a "national consensus" standard, however, which the Secretary wished to adopt could be promulgated by a different and more burdensome procedure provided in section 6(b) of OSHA, 29 U.S.C. § 655(b). That procedure contemplates the use of an advisory committee to make recommendations to the Secretary of Labor or the Secretary of HEW, and requires publication in the Federal Register for public comment. Thirty days after publication, the Secretary may issue a rule promulgating, modifying or revoking an occupational safety or health standard or make a determination that a rule should not be issued. 29 U.S.C. § 655(b)(1)–(4). *See* 1970 U.S.Code Cong. & Admin.News, pp. 5177, 5182–5184.

In accordance with section 6(a), the Secretary of Labor on May 29, 1971, adopted certain American National Standards Institute (ANSI) standards which the Secretary determined had been "adopted and promulgated under . . . procedures" qualifying them as "national consensus" standards and promulgated them as regulations, effective August 27, 1971. 36 Fed.Reg. 10466. Included in this action was the occupational safety and health regulation at issue here, 29 C.F.R. § 1910.28(a)(3).

As formulated by the American National Standards Institute, the standard in question provided that "[g]uardrails and toeboards *should* be installed . . ." [Emphasis added.] *American National Standard Safety Requirements for Scaffolding,* American National Standards Institute, 1969, p. 9, ¶ 3.3. The Secretary, however, changed the wording of the standard in issue to ". . . *shall* be installed . . ." [emphasis added] thus making it a "mandatory" regulation instead of the "advisory" one that had been denoted by the ANSI. *See Id.* at 7, ¶ 1.4.[3] This alteration affects the validity of the promulgation.

In *Usery v. Kennecott Copper Corp.,* 577 F.2d 1113 (1977), the Tenth Circuit Court of Appeals held the identical regulation invalid as improperly promulgated. That court reasoned:

---

ment on its adoption, (2) was formulated in a manner which afforded an opportunity for diverse views to be considered and (3) has been designated as such a standard by the Secretary, after consultation with other appropriate Federal agencies.

**3.** ANSI's 1969 standards have the following definitions:

1.4 Mandatory and Advisory Rules.
Mandatory rules of this standard are characterized by the word *shall.* If a rule is of an advisory nature it is indicated by the word *should,* or is stated as a recommendation. [Emphasis in original.]

It is the Secretary's adoption of the regulation by use of the word *shall* rather than the word *should* which poses the problem presented here. We must determine whether this usage constitutes such a substantial change that the regulation is not to be considered as a national consensus standard.

The Secretary contends that the change from *should* to *shall* is not significant, in that it is simply a pro forma change, having no substantive effect on the regulation.[4]

\*   \*   \*   \*   \*   \*

Employers are, of course, required to comply with standards properly established by the Secretary. The Act accords its special interim treatment exclusively to "any national consensus standard and any established Federal standard." The usual procedural due process safeguards accorded to persons who might be adversely affected by government regulations were relaxed only to the extent that standards, which had already been scrutinized and recognized by those to be affected and upon which there existed substantial agreement, would be considered acceptable for adoption as "national consensus standards." If, however, standards which were to be adopted during the two year interim involved modifications of established standards, then a formalized procedure had to be followed. This procedure included: recommendations to the Secretary from an advisory committee, publication of a proposed rule in the Federal Register, allowance of time for comments from interested persons, and public hearing if objections are raised. These procedures are designed to provide those who might be affected the opportunity to acquaint themselves with the proposed rule and to voice any possible opposition thereto. These procedural due process requisites have long been recognized as part of our system of jurisprudence.

We hold that the Secretary did not comply with the statute by reason of his failure to adopt the ANSI standard verbatim or by failure to follow the appropriate due process procedure. The promulgation of the standard with the use of *shall* rather than *should* did not constitute the adoption of a national consensus standard. It is, therefore, unenforceable. In order for the Secretary to have rendered the standard enforceable with the change in language, he was obliged to observe the rulemaking procedures contained in the Act. Administrative regulations are not absolute rules of law and should not be followed when they conflict with the design of the statute or exceed the administrative authority granted. [Emphasis in the original. Footnotes deleted.]

*Usery v. Kennecott Copper Corp., supra,* 577 F.2d at 1117–1118. *In accord, Marshall v. Pittsburg-Des Moines Steel Co.,* 584 F.2d 638, 643–644 (3rd Cir. 1978).

We are in agreement with the analysis of the Tenth Circuit and hold the Secretary improperly promulgated the standard dealing with mandatory guardrails. We affirm the decision of the Commission that UNION OIL could not be held in violation of an unenforceable standard.

## II.

In addition to arguing the validity of the guardrail standard, the Secretary urges that UNION OIL may not raise procedural invalidity as an affirmative defense in an

---

**4.** The Secretary makes the same claim here. It is significant that this claim is a departure from the Secretary's prior position as noted in the publication where the Secretary adopted the ANSI standards:

[I] hereby designate as national consensus standards those standards in Part 1910 which are standards adopted and promulgated by either the American National Standards Institute or the National Fire Protection Association. The national consensus standards contain only mandatory provisions of the standards promulgated by those two organizations. The standards of ANSI and NFPA may also contain advisory provisions and recommendations, the adoption of which by employers is encouraged, but they are not adopted in Part 1910.

36 Fed.Reg. 10466 (1971).

enforcement proceeding. He cites *National Industrial Constructors, Inc. v. OSHRC,* 583 F.2d 1048 (8th Cir. 1978) [*NIC*], in which the Secretary adopted, as OSHA regulation 29 C.F.R. § 1926, a regulation which had been promulgated pursuant to Section 107 of the Construction Safety Act, 40 U.S.C. § 333. National Industrial Constructors, Inc., which was alleged to be in violation of the regulation, argued that the Construction Safety Act regulations had not been validly promulgated in accordance with the Administrative Procedure Act, 5 U.S.C. § 553, and consequently were not "established Federal standards." *NIC, supra,* 583 F.2d at 1050.

The Eighth Circuit rejected National's attack on the regulation as a "procedural attack" on the "manner in which 29 C.F.R. § 1926 had been promulgated." *NIC, supra,* 583 F.2d at 1051. The court noted that the claim that a regulation is "arbitrary or unreasonable," a so-called "substantive attack," is a permissible post-promulgation attack on the validity of a regulation. *Id.* at 1051, n. 8, 1052–1053. The "procedural attack," however, was held to be precluded by Congress by the enactment of Section 6(f) of OSHA, 29 U.S.C. § 655(f).[5] *Id.*

Section 6(f) provides for judicial review of a regulation within 60 days of the regulation's adoption. The Senate Report on OSHA stated:

> *Judicial Review of Standards.*—Section 6(f) provides that any person who may be adversely affected by a standard may, within 60 days of its issuance, seek judicial review in an appropriate United States court of appeals. While this would be the exclusive method for obtaining pre-enforcement judicial review of a standard, the provision does not foreclose an employer from challenging the validi-

ty of a standard during an enforcement proceeding.

Senate Report No. 91–1282, *supra,* 1970 U.S.Code Cong. & Admin.News at p. 5184.

The Eighth Circuit read the language of the Senate Report to allow a substantive challenge of the validity of a regulation in an enforcement proceeding. The court went on, however, to hold that a procedural challenge is different and must be raised in a pre-enforcement proceeding instituted pursuant to Section 6(f):

> The agency's interest in finality, coupled with the burden of continuous procedural challenges raised whenever an agency attempts to enforce a regulation, dictates against providing a perpetual forum in which the Secretary's procedural irregularities may be raised.

*NIC, supra,* 583 F.2d at 1052. The court cites no Congressional authorization for this distinction between substantive and procedural challenges; rather it bases its decision on arguments of policy.

■ We find the rationale for the distinction unpersuasive and decline to follow the decision in *NIC.* This court, following the Supreme Court's lead, has consistently held that judicial review of agency action "will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). *See,* e. g., *County of Alameda v. Weinberger,* 520 F.2d 344, 348 (9th Cir. 1975). "There is no presumption against judicial review and in favor of administrative absolutism . . . unless that purpose is fairly discernible in the statutory scheme." *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 157, 90 S.Ct. 827, 831–832, 25 L.Ed.2d 184 (1970).

---

**5.** Section 6(f), 29 U.S.C. § 655(f) provides:

Any person who may be adversely affected by a standard issued under this section may at any time prior to the sixtieth day after such standard is promulgated file a petition challenging the validity of such standard with the United States court of appeals for the circuit wherein such person resides or has his principal place of business, for a judicial re-

view of such standard. A copy of the petition shall be forthwith transmitted by the clerk of the court to the Secretary. The filing of such petition shall not, unless otherwise ordered by the court, operate as a stay of the standard. The determinations of the Secretary shall be conclusive if supported by substantial evidence in the record considered as a whole.

The same considerations apply here. We feel that we should not foreclose a challenge to the procedural validity of an OSHA regulation in the absence of express authorization from Congress. Without more, the language of Senate Report No. 91–1282, *supra*, is clear: "[T]he provision [§ 6(f)] does not foreclose an employer from challenging the validity of a standard during an enforcement proceeding." *See* also, *Noblecraft Industries v. Secretary of Labor*, 614 F.2d 199, 201 (9th Cir. 1980).

We do note that to require the regulated employers to comb through industry standards and object to their promulgation at the outset would have been burdensome; especially when it is realized that a multitude of regulations could have been promulgated without notice or hearing within two years of the enactment of OSHA.

Hence, we find that the challenge raised to the infirmities of the Secretary's promulgation of 29 C.F.R. § 1910.28(a)(3) was properly raised by UNION OIL in the enforcement proceeding.

AFFIRMED.