656 F.2d 925
 9 O.S.H. Cas.(BNA) 2102, 1981 O.S.H.D. (CCH) P 25,595
DANIEL INTERNATIONAL CORPORATION, Petitioner,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and The
Secretary of Labor, Respondents.
 No. 80-1357.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 3, 1981.
Decided Aug. 5, 1981.
 
 Carl B. Carruth, Greenville, S.C. (George A. Harper, Thompson, Mann & Hutson, Greensville, S.C., on brief) for petitioner.
 Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Washington, D. C. (Clarin A. Clauss, Sol. of Labor, Allen H. Feldman, Counsel for Appellate Litigation, Charles I. Hadden, Asst. Counsel for Appellate Litigation, Thomas L. Holzman, U.S. Dept. of Labor, Tedrick A. Housh, Jr., Regional Sol., Washington, D. C., on brief), for respondents.
 Before BRYAN, Senior Circuit Judge, and BUTZNER and MURNAGHAN, Circuit Judges.
 MURNAGHAN, Circuit Judge:
 
 
 1
 During late August and early September, 1977, two compliance officers for the Occupational Safety and Health Administration inspected a construction site in Iatan, Missouri, where Daniel International Corp. was constructing an electrical generating power station. As a result of the inspection, the Secretary of Labor issued four citations against Daniel, alleging violations of OSHA construction safety standards, with a proposed penalty of $13,760.[1] After conducting an evidentiary hearing, an administrative law judge affirmed some of the citations, vacated others, and reduced the penalty to $1,195.
 
 
 2
 Daniel now appeals several findings of the administrative law judge.[2] First, Daniel argues that all findings of violations against it must be dismissed, because the construction safety standards, published at 29 C.F.R. Part 1926, were invalidly promulgated. Second, Daniel argues that the finding that it violated the temporary flooring standard, 29 C.F.R. 1926.750(b)(2)(i) must be dismissed, because the standard was improperly amended. Daniel also argues that, even if the standard was properly amended, there was insufficient evidence in the record to support a finding that Daniel violated the standard. Third, Daniel argues that there was insufficient evidence in the record to support a finding that Daniel violated the safety training standard, 29 C.F.R. 1926.21(b)(2).
 
 
 3
 1. Promulgation of 29 C.F.R. Part 1926.
 
 
 4
 The Occupational Safety and Health Act of 1970 authorized the Secretary of Labor to promulgate safety and health standards in either of two ways. Section 6(b) of the Act, 29 U.S.C. § 655(b), authorized the Secretary to promulgate standards through general notice and comment rulemaking, designed to extend due process safeguards to persons potentially affected by the standards. Section 6(a) of the Act, 29 U.S.C. § 655(a), however, provided an interim shortcut to the notice and comment procedures of § 6(b): during the first two years following OSHA's effective date, the Secretary could adopt as an OSHA standard any national consensus standard[3] or any Federal standard promulgated under another statute and in effect on OSHA's effective date.[4] OSHA's legislative history indicates that Congress provided the summary procedure because of the severity of the industrial safety problem; the purpose of the procedure was to enable the Secretary of Labor to establish as rapidly as possible national occupational health and safety standards with which industry was familiar. Because national consensus standards or established Federal standards would have been promulgated through procedures which gave the holders of diverse views an opportunity to comment, Congress concluded that it would be appropriate to permit the Secretary to adopt such standards without regard to the formal requirements of the Administrative Procedure Act. See S.Rep.No.91-1282, 91st Cong., 2d Sess. 6, reprinted in (1970) U.S. Code Cong. & Ad. News 5177, 5182.
 
 
 5
 The standards challenged here, published at 29 C.F.R. Part 1926, originally were promulgated under § 107 of the Construction Safety Act, 40 U.S.C. § 333 (1969), and adopted as OSHA standards through the summary procedures of § 6(a). Daniel argues that the adoption of the standards as OSHA standards was invalid, because the original promulgation of the standards under the Construction Safety Act failed to comply with the procedural requirements of § 553 of the Administrative Procedure Act.[5]
 
 
 6
 Section 553 requires (1) general notice of proposed rulemaking, 5 U.S.C. § 553(b); (2) an opportunity for interested persons to comment on the proposed rule, 5 U.S.C. § 553(c); and (3) publication of the proposed rule in the Federal Register 30 days before its effective date, 5 U.S.C. § 553(d). Notice of proposed promulgation of Construction Safety Act standards was published in the Federal Register on February 1, 1971, with a list of the proposed standards. Interested persons were invited to submit written views, data, and arguments. See 36 Fed.Reg. 1802 (1971). Interested persons also were given an opportunity to comment at six regional hearings. Final publication of the adopted standards in the Federal Register occurred on April 17, 1971. The publication stated, however, that the standards would become effective on April 27, 1971, only ten days after publication, instead of on a date 30 days after publication, as required by § 553. See 36 Fed.Reg. 7430 (1971). The shortened publication period enabled the standards to take effect one day before the effective date of OSHA, April 28, 1971.
 
 
 7
 The explanation accompanying final publication of the standards stated that acceleration of the effective date was justified either by the "good cause" or the "public contracts" exceptions to § 553 rulemaking procedures. See 5 U.S.C. §§ 553(a)(2), (d)(3).[6] The essence of Daniel's challenge is that neither the "good cause" nor the "public contracts" exception justified acceleration of the effective date. Daniel argues that the standards should not have become effective until 30 days after publication in the Federal Register. The standards, the argument continues, were not properly in effect on the date OSHA took effect, and therefore could not be adopted as OSHA standards through the summary procedures of § 6(a). The Secretary was required to promulgate the standards through the more formal procedures of § 6(b). Because the Secretary has never complied with § 6(b), the argument concludes, the standards are void and the citations issued against Daniel must be dismissed.
 
 
 8
 As a preliminary matter, the court must consider whether Daniel can challenge promulgation of the standards in an enforcement proceeding. Relying on National Industrial Constructors v. OSHRC, 583 F.2d 1048 (8th Cir. 1978), the Secretary argues that a party cannot raise procedural challenges to OSHA standards in an enforcement proceeding.
 
 
 9
 The Eighth Circuit held in NIC that all procedural challenges to OSHA standards must be brought in proceedings within 60 days after the effective date of the standard. The court reached this conclusion through an interpretation of § 6(f) of OSHA, 29 U.S.C. § 655(f). Section 6(f) states in part:
 
 
 10
 Any person who may be adversely affected by a standard issued under this section may at any time prior to the sixtieth day after such standard is promulgated file a petition challenging the validity of such standard with the United States court of appeals for the circuit wherein such person resides or has his principal place of business, for a judicial review of such standard.
 
 
 11
 By its terms, § 6(f) appears to restrict all judicial review of OSHA standards both substantive and procedural to pre-enforcement proceedings, or at least to a proceeding no more than 60 days delayed beyond the date of promulgation of the standard.[7]
 
 
 12
 Quoting from OSHA's legislative history, however, the court in NIC noted that Congress could not have intended preenforcement proceedings to provide the exclusive forum for judicial review: "While (Section 6(f)) would be the exclusive method for obtaining pre-enforcement judicial review of a standard, the provision does not foreclose an employer from challenging the validity of a standard during an enforcement proceeding." 583 F.2d at 1052, quoting S.Rep.No.91-1282, 91st Cong., 2d Sess. reprinted in (1970) U.S.Code Cong. & Ad.News 5177, 5184.
 
 
 13
 The court concluded that, at a minimum, Congress must have intended that substantive challenges, which the court defined as claims that a standard is arbitrary or unreasonable, could be raised in enforcement proceedings. The court noted that the economic or technical unreasonableness of a standard may become discernible only after an employer has made a good faith effort to comply, long after the standard takes effect.
 
 
 14
 The court found, however, that the same considerations did not apply to procedural challenges. The court said that an argument that the Secretary failed to comply with the procedural requirements of the APA need not await the test of time, would be immediately discernible and can and should be raised within 60 days of promulgation. Further, the "agency's interest in finality, coupled with the burden of continuous procedural challenges raised whenever an agency attempts to enforce a regulation, dictates against providing a perpetual forum in which the Secretary's procedural irregularities may be raised. Were there no limitation upon the time within which procedural attacks could be made, the resulting uncertainty might inhibit employers, otherwise able and willing, from complying with a regulation." 583 F.2d at 1052. Therefore, the court held that procedural challenges must be raised in a proceeding pursuant to § 6(f) initiated within 60 days of promulgation.
 
 
 15
 Although the analysis of § 6(f) in NIC has appeal, both the Ninth Circuit and the Fifth Circuit subsequently have rejected it. In Marshall v. Union Oil Co., 616 F.2d 1113 (9th Cir. 1980), and in Deering Milliken, Inc. v. OSHRC, 630 F.2d 1094 (5th Cir. 1980), both courts held that a petitioner may raise procedural as well as substantive challenges in an enforcement proceeding. The reasoning of the two decisions is very similar. Each court described the Eighth Circuit's analysis as grounded in policy rather than the terms or the legislative history of the Act. Neither court could find in the legislative history any intent to preclude judicial review in an enforcement proceeding, or any support for a distinction between substantive and procedural challenges. Each court read the language from the Senate Report quoted above to allow challenges to the validity of a standard substantive or procedural in an enforcement proceeding. Relying on Supreme Court statements that in the absence of explicit language judicial review of agency action should not be restricted, each court refused to hold that § 6(f) bars procedural challenges to a standard in an enforcement proceeding.[8]
 
 
 16
 Finally, each court noted a practical consideration in reaching its conclusion: To interpret § 6(f) to restrict procedural challenges would require regulated employers in many situations to comb through a myriad of standards within 60 days of their adoption to determine which, if any, were procedurally defective. Although Congress could have placed that burden on employers, each court was reluctant to do so in the absence of express authorization. See Deering Milliken, Inc. v. OSHRC, 630 F.2d 1094, 1098-99 (5th Cir. 1980); Marshall v. Union Oil Co., 616 F.2d 1113, 1116-18 (9th Cir. 1980).
 
 
 17
 Despite the sharp disagreement between Deering Milliken and Union Oil on the one hand, and NIC on the other, the differences are less significant than the opinions themselves suggest. Even if an employer may raise a procedural challenge in an enforcement proceeding, the employer still must demonstrate that it has suffered prejudice because of the administrative action.[9] In both Deering Milliken and Union Oil, the employer challenged specific standards which the Secretary modified when adopting the standards as OSHA standards. The employers suffered prejudice because the modification of the standards effectively denied them an opportunity to comment on the standards.[10]
 
 
 18
 No similar prejudice occurred here, or in NIC.[11] The purpose of the 30-day notice requirement in § 553(d) is to "afford persons affected a reasonable time to prepare for the effective date of a rule or rules or to take any other action which the issuance of rules may prompt." Administrative Procedure Act Legislative History, 79th Cong., 2d Sess. 201 (1946). The Construction Safety Act standards became effective in April, 1971, and became effective as OSHA standards in May, 1971.[12] The inspections of Daniel's construction site occurred in August and September, 1977. Daniel can hardly claim that it was denied a sufficient and reasonable opportunity to prepare for any attack it might, over six years after their promulgation, care to make whether we speak in terms of an April 1971 or a May 1971 effective date.[13] Because Daniel can make no showing that the acceleration of the effective date caused it prejudice, we hold that Daniel's challenge is without merit. We, therefore, find it unnecessary to consider whether the acceleration was justified by either the "good cause" or "public contracts" exceptions to § 553.[14]
 
 
 19
 2. Amendment of the Temporary Flooring Standard
 
 
 20
 Daniel next challenges amendment of the temporary flooring standard, 29 C.F.R. 1926.750(b)(2)(i). As originally promulgated, the standard required a substantial floor to be maintained two stories or 25 feet, whichever was less, below each tier of beams "on which bolting, riveting, welding, or painting (was) being done." The notice published in the Federal Register requested comment on a proposal to lower the distance at which a floor must be maintained from 25 to 30 feet below a beam. The purpose of the proposal was to allow "new methods of steel erection which have resulted in the use of greater depth of floor framing members." 39 Fed.Reg. 2015 (1974).
 
 
 21
 As amended, however, the standard not only lowered the distance requirement from 25 to 30 feet, but also expanded application of the standard from beams "on which bolting, riveting, welding, or painting" is performed to beams on which "any work" is performed. The explanation accompanying publication of the amended standard indicated that the additional change was made in response to comments that the original standard unnecessarily excluded from protection other operations or work activities. The "comments appear to agree that employees engaged in skeletal steel erection should be protected by the standard regardless of the ... work activity involved." 39 Fed.Reg. 24360 (1974).
 
 
 22
 Daniel argues that the final amendment differed so substantially from the proposed amendment that Daniel effectively had no notice of the issues involved. The argument is without merit. Although the APA requires that notice contain "either the terms or substance of the proposed rule or a description of the subjects and issues involved," 5 U.S.C. § 553(b)(3), the Act "does not require an agency to publish in advance every precise proposal which it may ultimately adopt as a rule." Spartan Radiocasting Co. v. F.C.C., 619 F.2d 314, 321 (4th Cir. 1980), quoting California Citizens Band Association v. United States, 375 F.2d 43, 48 (9th Cir. 1967), cert. denied, 389 U.S. 844, 88 S.Ct. 96, 19 L.Ed.2d 112 (1967). This is particularly true when proposals are adopted in response to comments from participants in the rulemaking proceeding. The "requirement of submission of a proposed rule for comment does not automatically generate a new opportunity for comment merely because the rule promulgated differs from the rule proposed, partly at least in response to submission." International Harvester Co. v. Ruckelshaus, 478 F.2d 615, 632 (D.C. Cir. 1974). A contrary rule would lead to the absurdity that an agency could learn from comments on its proposals only at the peril of starting a new procedural round of commentary. Id. at 632, n.51. Here the additional change in the standard was made in response to comments; although the notice did not indicate that a change in application of the standard was contemplated, the fact that numerous comments were submitted on the issue suggests that notice was adequate. To hold otherwise would penalize the agency for benefitting from comments received and further bureaucratize the process.
 
 
 23
 Daniel also argues that, even if amendment of the standard was valid, there was insufficient evidence in the record to support a finding that Daniel violated the standard. Daniel argues that the beams in question merely provided walkways to work areas; consequently no work was performed on them. The Commission, however, has defined "work" to include presence in areas of access to and from work areas. See Gelco Builders, Inc., 1977-78 Occupational Safety & Health Decisions P 22,353 p. 26,941 (Rev.Com.1977). Because the interpretation is reasonable and consistent with the remedial purpose of the Act, we affirm the finding of the administrative law judge that Daniel violated the temporary flooring standard.
 
 
 24
 3. Violation of the Safety Training Standard
 
 
 25
 Finally, Daniel argues there was insufficient evidence in the record to support a finding that Daniel violated 29 C.F.R. 1926.21(b)(2), the safety training standard. Because the Secretary conceded at oral argument that the evidence was insufficient, the finding of a violation of the standard is reversed.
 
 
 26
 AFFIRMED IN PART; REVERSED IN PART.
 
 
 
 [1]
 The citations alleged one serious violation, two willful violations, two repeat violations, and 21 nonserious violations
 
 
 [2]
 Daniel also petitioned for discretionary review with the Occupational Safety and Health Review Commission. The sole issue raised before the Commission was whether the inspection violated Daniel's Fourth Amendment right against unreasonable searches and seizures. The Commission found no Fourth Amendment violation, and affirmed the decision of the administrative law judge. Daniel does not appeal any aspect of the Commission's decision
 
 
 [3]
 A "national consensus standard" is any occupational safety and health standard which was (1) promulgated by a nationally recognized standards-producing organization, (2) under procedures which gave the holders of diverse views an opportunity to comment, and (3) was designated as a national consensus standard by the Secretary. See 29 U.S.C. § 652(9)
 
 
 [4]
 An "established Federal standard" is "any operative occupational safety and health standard established by any agency of the United States and presently in effect, or contained in an Act of Congress in force on December 29, 1970." 29 U.S.C. § 652(10)
 
 
 [5]
 Section 107(a) of the Construction Safety Act, 40 U.S.C. § 333, directed the Secretary of Labor to promulgate regulations "based on proceedings pursuant to Section 553 of Title 5," including "a hearing of the nature authorized by said section."
 
 
 [6]
 Section 553(a) states that "This section applies, according to the provisions thereof, except to the extent that there is involved ... (2) a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts." Section 553(d) states "the required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except ... (3) as otherwise provided by the agency for good cause found and published with the rule."
 
 
 [7]
 Practically, the 60-day limit essentially restricts review to pre-enforcement proceedings
 
 
 [8]
 In Deering Milliken, the court said:
 This Circuit has consistently held that "(a) long-standing and strong presumption exists that action taken by a federal agency is reviewable in federal court." Save the Bay, Inc. v. Administrator of EPA, 556 F.2d 1282, 1293 (5th Cir. 1977). "A statute must demonstrate clear and convincing evidence of an intent to preclude judicial review before courts will cut off an aggrieved party's right to be heard." Gallo v. Mathews, 538 F.2d 1148, 1151 (5th Cir. 1976). See Consolidated-Tomoka Land Company v. Butz, 498 F.2d 1208, 1209 (5th Cir. 1974). This position is consistent with the Supreme Court's mandate in Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967): "(J)udicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress."
 630 F.2d at 1099.
 In Union Oil, the court said:
 This court, following the Supreme Court's lead, has consistently held that judicial review of agency action "will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). See, e. g., County of Alameda v. Weinberger, 520 F.2d 344, 348 (9th Cir. 1975). "There is no presumption against judicial review and in favor of administrative absolutism ... unless that purpose is fairly discernible in the statutory scheme." Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 157, 90 S.Ct. 827, 831-832, 25 L.Ed.2d 184 (1970).
 The same considerations apply here. We feel that we should not foreclose a challenge to the procedural validity of an OSHA regulation in the absence of express authorization from Congress. Without more, the language of Senate Report No. 91-1282, supra, is clear: "(T)he provision (§ 6(f)) does not foreclose an employer from challenging the validity of a standard during an enforcement proceeding."
 616 F.2d at 1117-18.
 
 
 [9]
 We find it appropriate to require a showing of prejudice in these circumstances. A showing of prejudice has been required with regard to several sections of OSHA. See Marshall v. N. L. Industries, 618 F.2d 1220, 1225 (7th Cir. 1980) (Secretary's failure to comply with 90-day limit in OSHA § 11(c)(3) will not bar action where defendant not prejudiced); Pullman Power Products v. Marshall, 655 F.2d 41 (4th Cir. 1981); Marshall v. Western Waterproofing Co., 560 F.2d 947, 951-52 (8th Cir. 1977) (failure of compliance officers to give employer's representatives opportunity to accompany officers during inspection, as specified by § 8(e), requires citation to be vacated only upon showing of prejudice); National Roofing Contractors Association v. Brennan, 495 F.2d 1294 (7th Cir. 1974) (Secretary's failure to appoint representative of roofing industry to advisory committee will not invalidate standards in absence of showing of specific prejudice). The Second Circuit also has found a failure to show prejudice significant where the failure of an agency to publish rules 30 days before their effective date is the basis of an attack on a regulation. See British American Commodity Options Corp. v. Bagley, 552 F.2d 482, 489 (2d Cir. 1977), cert. denied, 434 U.S. 938, 98 S.Ct. 427, 54 L.Ed.2d 297 (1977) (failure of Commodity Future Trading Commission to publish rules 30 days before effective date, as specified in § 553(d), will not invalidate rules where Commission had good cause for accelerating the effective date, especially where plaintiff made no showing of prejudice). Cf. Market Street R. Co. v. Railroad Commission, 324 U.S. 548, 562, 65 S.Ct. 770, 777, 89 L.Ed. 1171 (1945) (procedural due process is not to be trivialized by formal objections that have no substantial bearing on the rights of the parties)
 
 
 [10]
 At issue in Union Oil was 29 C.F.R. § 1910.28(a)(3). As formulated by the American National Standards Institute, the standard stated "(g)uardrails and toeholds should be installed" (emphasis added). In adopting the standard, the Secretary changed the wording to "shall be installed" (emphasis added), making the standard mandatory rather than advisory. See 616 F.2d at 1115
 At issue in Deering Milliken were standards originally promulgated under the Walsh-Healy Public Contracts Act, 41 U.S.C. § 35 et seq. (1976), and published as OSHA standards at 29 C.F.R. § 1910.1000. On the merits, the court concluded that modifications to these standards were not substantial. See 630 F.2d at 1099-1103.
 
 
 [11]
 The challenge raised in NIC was precisely the challenge raised here. See 583 F.2d at 1051-52
 
 
 [12]
 Although the Construction Safety Act standards were adopted as OSHA standards on May 29, 1971, the Secretary delayed for 90 days application of the standards to employers who were not already subject to established Federal standards. The standards did not become effective with regard to the majority of employers until August 27, 1971. See 36 Fed.Reg. 10466 (1971)
 
 
 [13]
 Daniel argues that it suffered prejudice because it lost an opportunity to comment that it would have had if the Secretary had adopted the Construction Safety Act standards through § 6(b) rather than § 6(a). The loss of such an opportunity, however, does not constitute prejudice, because the opportunity was not one to which Daniel or other affected persons was or were entitled. As discussed earlier, Congress concluded that the summary procedure in § 6(a) was appropriate because the standards adopted would already have been developed through procedures that allowed diverse views to be presented. See text following n.4, supra. Therefore, it was unnecessary, indeed superfluous, to require yet another opportunity to comment before such standards became OSHA standards. The Construction Safety Act standards, in fact, were promulgated according to the notice and comment requirements of § 553. The proposed standards were published in the Federal Register, interested persons were invited to comment, hearings were held, and the standards were published in final form. The acceleration of the effective date of the OSHA standard in no way deprived interested persons of the opportunity to comment
 Daniel points to the consideration that it never had an original opportunity to comment, because it was not affected by the Construction Safety Act standards, and the notice gave no indication that the standards would be adopted as OSHA standards, applicable to all employers (the Construction Safety Act applied only to construction employers entering contracts with the federal government or participating in federally assisted projects). But the fact that Daniel did not participate in the original hearings did not entitle it to an additional opportunity to comment. Congress determined that the views of employers such as Daniel would be adequately represented in the original hearings. Daniel's argument essentially is an argument that the summary adoption procedure in § 6(a) is altogether invalid. The overkill inherent in the contention condemns it.
 
 
 [14]
 See note 6, supra