Dwight COLEMAN et al., Plaintiffs,

v.

**John R. BLOCK\*, Secretary of Agriculture, et al., Defendants.**

**No. A1–83–47.**

United States District Court, D. North Dakota, Southwestern Division.

May 7, 1987.

Supplemental Memorandum and Order June 2, 1987.

---

\* John R. Block was substituted for Richard E. Lyng upon his assuming office.

1318

James T. Massey and Lynn A. Hayes, St. Paul, Minn., for plaintiffs.

Arthur R. Goldberg, Dept. of Justice, Civ. Div., Washington, D.C., for defendants.

### Memorandum and Order

VAN SICKLE, District Judge.

Plaintiffs' First Amended Supplemental Class Action Complaint was filed January 21, 1986. The factual background of the supplemental complaint is provided in *Cole-man v. Block*, 632 F.Supp. 1005 (D.N.D. 1986). Defendants have brought a motion for an order granting a summary judgment of dismissal of the supplemental complaint, filed June 16, 1986. The motion has been exhaustively briefed, and was the subject of a hearing held March 23, 1987.

The supplemental complaint presents fourteen claims for relief, all of which are challenged by the summary judgment motion. Defendants asserted in their briefs and at the hearing that the first, second, third, and fifth claims for relief are no longer at issue, having been resolved to the satisfaction of the parties, though without any formal settlement agreement. Plaintiffs acquiesced to this assertion, and have not pressed or defended these four claims at any time in these summary judgment proceedings.

The first and second claims allege that the FmHA regulations published November 1, 1985, eliminated the previous priority given to security releases for necessary family and farm living and operating expenses, and that this regulatory change was arbitrary and capricious and constituted a taking without just compensation. FmHA's policy on living and operating releases was subsequently modified, apparently to plaintiffs' satisfaction. The third and fifth claims allege that no hearing or appeals process was available to borrowers who were unable to reach agreement with the FmHA county supervisor on the use of future farm income, or who were denied requested releases of security for living and operating expenses, in violation of the due process clause of the Fifth Amendment to the United States Constitution. Access to FmHA's appeal process has since been extended to these situations, again apparently to plaintiffs' satisfaction. Summary judgment dismissing these four claims will be ordered.

The sixth claim alleges that FmHA's form 1962–1, which is the document used in forecasting farm income and expenses, is virtually impossible to complete, and so should be set aside as an arbitrary and capricious abuse of discretion. This claim is the subject of settlement discussions

which apparently are nearing fruition. Briefing and resolution of this claim has been stayed in anticipation of settlement.

■ The summary judgment motion against the other nine claims for relief remains for review. Five of these claims are based on section 706 of the Administrative Procedures Act:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706.

Claims 4, 7, 9, and 12 invoke § 706(2)(A), claims 7 and 12 invoke § 706(2)(C), claims 11 and 12 invoke § 706(2)(D), and claim 11 invokes § 706(2)(E). The "substantial evidence" standard of subsection (E) is only applicable to administrative actions or findings that are based on a hearing record. *Camp v. Pitts*, 411 U.S. 138, 140–141, 93 S.Ct. 1241, 1243, 36 L.Ed.2d 106 (1978). The rulemaking procedure utilized by FmHA in this case was the informal notice and comment method under 5 U.S.C. § 553(c), not the formal hearing method

under 5 U.S.C. §§ 556 and 557. Since the administrative actions now at issue were not based on a hearing record, 5 U.S.C. § 706(2)(E) is not applicable to this case, and plaintiffs' complaint will be dismissed to the extent it is based on that subsection.

■ A federal court reviewing agency action pursuant to 5 U.S.C. § 706(2)(A) will normally consider only the administrative record on which the action was based. *Arkla Exploration Co. v. Texas Oil & Gas Corp.*, 734 F.2d 347, 357 (8th Cir.1984). Supplementary material can be admitted and considered for the limited purpose of explaining the record. *Id.* The court can consider additional evidence only if the record and the supplementary material do not provide an adequate basis for judicial review. *Independent Meat Packers Association v. Butz*, 526 F.2d 228, 238–239 (8th Cir.1975). If the supplemented record does provide an adequate basis for review, the issues are ripe for summary judgment. *Bank of Commerce of Laredo v. City National Bank of Laredo*, 484 F.2d 284, 288–289 (5th Cir.1973), *cert. denied*, 416 U.S. 905, 94 S.Ct. 1609, 40 L.Ed.2d 109 (1974). It is apparent that issues raised by a review of agency action pursuant to subsections (C) and (D) of 5 U.S.C. § 706(2) will as a rule involve only questions of law, and so also will be ripe for summary judgment, unless the record before the court is wholly inadequate.

The administrative record was filed with this court on January 21, 1986 (Docket No. 263). The record consists of the following:

1. A set of documents referred to as the "pretermination package." These are the forms used by FmHA in the course of taking adverse actions against borrowers between November 14, 1983, and October 19, 1984. This set of forms replaced those that were in use when this court's permanent injunction was issued, and was superseded by the new forms and regulations currently at issue.

2. The proposed regulations as published on November 30, 1984, at 49 FR 47007.

3. More than 250 written comments submitted to FmHA concerning the proposed regulations. These comments are discussed below.

4. A letter from Administrator Vance Clark dated October 23, 1985, requesting publication of the final regulations in the Federal Register.

5. The final regulations as published on November 1, 1985, at 50 FR 45740.

The vast majority of the comments submitted to FmHA are letters from private individuals, presumably farmers. Almost all of these are form letters, apparently composed, printed, and distributed by various parties, and then signed and submitted individually. The letters vary somewhat in tone and content, but all express strong opposition to some provisions of the proposed regulations. The provisions targeted by the letters, however, are not at issue before this court, either because the conflict concerning them has been resolved as outlined above, or because they were not challenged in the supplemental complaint.

Of the remaining comments, six are short letters from FmHA officials directed at matters not at issue in this case. A seventh letter, from James D. Reifsteck, Chief, FmHA Farmer Programs, Illinois, criticizes one aspect of the proposed text of FmHA form 1924–26, which is at issue. Mr. Reifsteck's criticism of subsection II(D) of form 1924–26 is quite brief, but is relevant to one aspect of plaintiffs' tenth claim for relief.

Another letter is signed by a Richard D. Long, Assistant Inspector General for Analysis and Evaluation. It is not clear whether Mr. Long is attached to FmHA or some other agency, but in any event his letter does not address any provision challenged by the supplemental complaint. "The Office of the Inspector General" also submitted an unsigned eight page critique of the proposed regulations. This comment is aimed mainly at technical and stylistic changes. One of the suggested changes would have clarified the subsection that describes the effect of a borrower's failure to return, by the specified time, a completed form 1924–26. The critic would insert the statement that the borrower would thereby "forfeit the right to administrative appeal." The suggested language is certainly more clear than that of the proposed rule, but it was not adopted in the final version. Indeed, the final version omits any direct statement at all of the fact that failure to file the form results in losing the right to appeal the adverse action. The approach of FmHA to such matters can perhaps be inferred from the note pencilled in beside this suggestion: "We don't want to use the word 'forfeit.'" Another suggestion made by the comment was to replace a subsection in the proposed rules with a new version beginning with the following sentence: "The applicant or borrower has a right to know the specific reasons for intended adverse actions." A comment pencilled in beside this suggestion reads: "Stay away from words like 'right.'" Although other aspects of the suggested replacement paragraph were incorporated in the final version, this first sentence was not adopted.

A letter by two New Mexico attorneys addresses an issue not before this court. Another letter is by Martha Miller, an attorney for the plaintiffs in the *Curry v. Block* litigation. In *Curry*, a statewide class of Georgia FmHA borrowers challenged FmHA loan servicing practices. *See Curry v. Block*, 541 F.Supp. 506 (1982), *aff'd*, 738 F.2d 1556 (11th Cir.1984). Three of Ms. Miller's criticisms touch on matters currently at issue. She points out that FmHA failed to publish proposed versions of FmHA forms 1924–14, 1924–25, and 1925–26 along with the proposed rules, rendering any comment on their contents impossible. This point is one aspect of plaintiffs' eleventh claim for relief. Ms. Miller requested that FmHA publish the proposed texts of the forms for comment, but FmHA apparently did not do so. Two of her criticisms of the proposed procedure for determining the eligibility of borrowers for loan deferrals stem from the unavailability of retroactive deferrals and the incorporation of subjective factors in the eligibility determination. These criticisms are quite brief and not specific, but appear to involve some

of the same concerns raised in plaintiffs' claims 12, 13, 14 and 7.

Gary DeCramer, a state senator from Minnesota, submitted five criticisms of the proposed rules in a letter. Substantially the same five criticisms were endorsed by the Minnesota Senate in the form of a resolution, which was forwarded to FmHA as a comment. Two of these criticisms, directed at the requirements that borrowers seek partial write-offs or restructurings of loans they have with local private lenders and have paid the real estate taxes and insurance premiums on their property in order to be considered eligible for loan deferrals, are also incorporated in plaintiffs' seventh claim for relief.

Minnesota Attorney General Hubert H. Humphrey III submitted a comment containing several criticisms, one of which was targeted at the allegedly vague and subjective factors that are considered by FmHA in determining deferral eligibility. As noted above, this concern is also raised in plaintiffs' seventh claim for relief. The Illinois South Project, Inc., also criticized this aspect of the program, as well as the requirement that borrowers seek to adjust their debts with local lenders. The comments submitted by Iowa Citizens for Community Improvement, Nebraska Governor Bob Kerrey, and Southern Minnesota Regional Services attorney Obert Knutson are not directed at issues currently before the court.

The final comment to be considered is the lengthy and thorough critique submitted by the Center for Rural Affairs in Walthill, Nebraska. A number of the Center's criticisms are relevant to the present review, and will be referred to in the course of this court's discussion of the claims for relief below.

5 U.S.C. § 553(c) requires that "[a]fter consideration of the material presented [in the administrative record], the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose." A ten page preface to the final rules as published presents such a statement, the sufficiency of which will be determined by this court in the course of the review below of the various provisions challenged in the supplemental complaint.

Courts reviewing agency actions pursuant to 5 U.S.C. § 706(2)(A) employ a narrow standard of review:

> Section 706(2)(A) requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1964 ed., Supp. V.). To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. (Citations ommitted). Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971).

To overturn an agency action as arbitrary and capricious, a court must find "[s]omething more than mere error." *First National Bank of Fayetteville v. Smith,* 508 F.2d 1371, 1376 (8th Cir.1974).

A reviewing court will also apply a narrow standard when considering questions of the proper construction of some statutes and administrative regulations:

> When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. "To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." (Citations omitted). "Particularly is this respect due when the administrative practice at stake 'involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making the parts work efficiently and smoothly while they are yet untried and new.'" (Citations omitted). When the

construction of an administrative regulation rather than a statute is at issue, deference is even more clearly in order. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).

Two observations are in order before reviewing the remaining claims. First, plaintiffs have, in their briefs and argument, attempted to bring certain allegedly improper practices of FmHA agents within this court's review. Their complaint, however, challenges only the propriety of the regulations themselves, not the manner in which those regulations are implemented. This court's review will be limited to the question of whether the adoption of the rules by FmHA was proper. Second, this court recognizes that it is a bewildering and regrettable phenomenon of any bureaucracy that agencies set up to regulate the activities of some members of the public often end up abetting their malfeasance, while agencies created to provide support to other members of the public often end up antagonistic to their interests. This court, however, is an organ of neither the legislature nor the executive, and has no role to play in the formulation of bureaucratic policy other than to review it according to the lawful standards discussed above.

■ Plaintiffs' fourth claim for relief alleges that FmHA's policy of not releasing security for living and operating expenses if the borrower has sufficient off-farm income to meet those expenses is contrary to 7 U.S.C. § 1985, and so must be set aside pursuant to 5 U.S.C. § 706(2)(A) as being not in accordance with law. 7 U.S.C. § 1985(f)(2) provides:

> Until such time as the Secretary accelerates a loan made or insured under this title, the Secretary shall release from the normal income security provided for such loan an amount sufficient to pay the essential household and farm operating expenses of the borrower, as determined by the Secretary.

Plaintiffs' position apparently is that this provision requires that FmHA grant releases for amounts equivalent to the minimum income level borrowers need to maintain their households and farms, even to those borrowers who do not actually need the released funds because they are receiving off-farm income sufficient to meet those minimum needs. Defendants' position is that FmHA's practice of granting releases in the amount actually needed by individual borrowers to meet minimum household and operating expenses is based on a permissible, and even the proper, interpretation of the statute.

This is a statute which FmHA is charged with implementing, and so this court will be inclined to defer to that agency's interpretation of its mandate. Further, this court will not substitute its judgment for that of the agency, but will instead only overturn the agency's determination if clear error is shown. FmHA's interpretation is not clearly erroneous. Even if this court were to substitute its own opinion for that of FmHA, it would nevertheless rule that FmHA's interpretation is the correct one, and is certainly preferable to the strained reading offered by plaintiffs.

Plaintiffs have raised no substantive defense of this claim in the face of defendants' summary judgment motion. This court informed plaintiffs at the March 23 hearing that an order granting a summary judgment of dismissal of this claim would be entered for the above reasons unless they presented some persuasive argument on its behalf, but counsel for plaintiffs declined to address the issue at all. Because FmHA's policy is a permissible implementation of 7 U.S.C. § 1985(f)(2) under the relevant standards of judicial review, an order granting a summary judgment of dismissal of plaintiffs' fourth claim for relief will be entered.

Plaintiffs' seventh claim for relief seeks to have three of the thirteen requirements FmHA considers when determining whether a borrower is eligible for a loan deferral held invalid. The three requirements challenged are found at 7 C.F.R. § 1951.44:

> (b) *Conditions.* In order to be considered for a deferral, the borrower must meet all of the following conditions:
>
> .    .    .    .    .

(5) The borrower must have attempted voluntary debt adjustment and/or rescheduling of payments with other creditors in accordance with Subpart A of Part 1903 of this chapter.

(c) FmHA's determinations. The FmHA official must determine that the borrower:

.    .    .    .    .

(3) Before experiencing the hardship, had paid, when due, all real estate taxes and property insurance premiums, and otherwise had complies [sic] with the other conditions of the loan documents;

.    .    .    .    .

(5) Applied recommended and recognized successful production and financial management practices;

(Emphasis in original).

Plaintiffs challenge these provisions pursuant to subsections (2)(A) and (2)(C) of 5 U.S.C. § 706. To the extent that the seventh claim for relief may state a claim under § 706(2)(E), such a claim will be dismissed for the reasons outlined above.

■ Plaintiffs' claim under subsection (2)(C) is that FmHA's adoption of the challenged provisions is in excess of that agency's statutory authority, citing 7 U.S.C. § 1981a. That statute grants the Secretary of the Department of Agriculture the authority to defer FmHA loans "upon a showing by the borrower that due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of such principal and interest without unduly impairing the standard of living of the borrower." 7 U.S.C. § 1981a. The three criteria for eligibility contained in this sentence of the statute are reflected in three of the eligibility requirements set forth under 7 C.F.R. § 1951.44.

Plaintiffs' concede that FmHA has the authority to adopt eligibility criteria in addition to the three mandated by the statute. This position is correct. *See Curry v. Block*, 738 F.2d 1556, 1561 (11th Cir.1984), citing *Allison v. Block*, 723 F.2d 631, 637 (8th Cir.1983). In adopting the ten additional requirements, then, the agency was not acting "in excess of statutory jurisdiction." An order granting a summary judgment of dismissal of plaintiffs' seventh claim for relief, so far as that claim rests on 5 U.S.C. § 706(2)(C), will be entered.

■ Plaintiffs raise a number of policy arguments in opposition to the requirement that borrowers seek to have the debts they owe to private creditors adjusted before they can be eligible for a deferral from FmHA. It does appear to this court that these arguments have some merit, and that this eligibility requirement may cause personal and financial difficulties for borrowers and their private creditors without greatly benefiting FmHA's loan program. However, as outlined above, this court cannot interject its own opinion of the preferable course of administrative policy, it can only determine whether the option actually chosen was a permissible one.

FmHA is intended to operate as a lender of last resort, providing credit to farmers who cannot obtain credit from private lenders. *Curry v. Block*, 541 F.Supp. 506, 511 (S.D. Ga. 1982) (Discussion of FmHA's history and statutory and regulatory framework). Section 1951(b)(5) apparently embodies a decision by FmHA to also act as a debt adjuster of last resort, deferring the loans of borrowers who cannot obtain deferrals elsewhere. However, FmHA has failed to follow the proper procedure in adopting this regulation. As was noted above, 5 U.S.C. § 553(c) requires FmHA to include with the final regulations promulgated a concise general statement of their basis and purpose. As was also noted above, this particular eligibility requirement was the subject of some criticism in the comments received during the notice period. FmHA responded to those comments in its statement of the basis and purpose of the requirement. That statement, in its entirety, is as follows:

A number of respondents object to the condition in § 1951.44(b)(5) that a borrower must have attempted voluntary debt adjustment and/or rescheduling of payments with other creditors before receiving a deferral. The respondents believed this to be unduly harsh on suppli-

ers, feed dealers and other creditors who expect full payment of debts in order to operate a viable business. FmHA, as a creditor, also expects full payment but has a responsibility to assist the borrower through a temporary period of reduced income with forebearance, in the form of a deferral. As long as the borrower's situation can improve, all creditors share that responsibility to assist borrowers through a time of financial difficulties for the benefit of the agricultural community. Many creditors may even improve their chances of debt collection because, if debt adjustment or rescheduling is not provided, the borrower may seek protection under the bankruptcy laws.

Consequently, the proposed amendment is adopted. 50 C.F.R. 45741.

The statement correctly asserts that FmHA has a special obligation to assist borrowers through difficult times. The further assertion that private creditors share this obligation may be at least arguable as a principle of economic morality, but as a statement of legal duty it is entirely unsupported. The idea that the requirement was adopted to facilitate debt collection by private creditors is plainly an ex post facto rationalization.

Defendants argue, in response to a similar challenge in claim eleven, that because their preface to the final rules is ten pages long and discusses the various sections and subsections individually, it must be sufficient to meet the "concise general statement" requirement of 5 U.S.C. § 553(c). However, it is the content, rather than the length and format, of the statement that is crucial. "The 'basis and purpose' statement required by Section 4(c) of the APA must be sufficiently detailed and informative to allow a searching judicial scrutiny of how and why the regulations were actually adopted." *Amoco Oil Co. v. Environmental Protection Agency*, 501 F.2d 722 (D.C. Cir.1974). The above statement does not inform the court of why this eligibility criterion was adopted. As was noted above, this rule was one of the main targets of criticism in the comments received, effec-

tively requiring FmHA to explain this particular aspect of the overall scheme. If FmHA truly adopted this rule simply because it didn't seem fair to the agency's decision makers that private lenders don't share FmHA's statutory duty to provide debt restructuring, then the rule will certainly be struck down as arbitrary and capricious. However, this court will for now treat the statement as a failure to explain, and will therefore require FmHA to supplement the record before finally reviewing the propriety of the rule. *Camp v. Pitts*, 411 U.S. 138, 143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973).

This court finds that the preface to the final rules fails to provide a concise general statement of either the basis or the purpose of 7 C.F.R. § 1951.44(b)(5), and so fails to meet the requirements of 5 U.S.C. § 553(c). This court will enter an order requiring FmHA to supplement the administrative record within thirty days of the entry of the order with a concise general statement of the basis and purpose of 7 C.F.R. § 1951.44(b)(5) as truly contemplated at the time that rule was promulgated.

■ Plaintiffs' objection to the requirement that the borrower have paid the real estate taxes and property insurance premiums prior to the onset of the hardship that causes the borrower to seek a deferral rests on an alleged underlying practice of FmHA agents. Plaintiffs claim that FmHA agents often unreasonably delay or deny security releases for farm and living expenses. They allege that the failure of borrowers to timely pay their taxes and insurance premiums, both considered farm operating expenses by FmHA, is often due to FmHA's failure to release funds for those purposes. This claim does not attack the merits of 7 C.F.R. § 1951.44(c)(3), but instead is a largely unsupported attack on the performance of unspecified FmHA agents. This court does not deny that there may well be substance to plaintiffs' allegations, but these allegations, even if proved, do not impugn the propriety of the eligibility requirement itself. They would instead provide the basis for challenges by

individual borrowers of findings by FmHA that they are ineligible for loan deferrals. This court will enter an order granting a summary judgment of dismissal of plaintiffs' seventh claim for relief, so far as that claim challenges 7 C.F.R. § 1951.44(c)(3).

■ Plaintiffs' challenge to the requirement that borrowers have applied unspecified sound production and financial practices similarly misses the mark. It is clear that it is within the discretion of FmHA to require that sound practices be followed. FmHA must be allowed to protect its security by refusing loan deferrals to at least the most incompetent or recalcitrant farmers. Plaintiffs do not contest this, but argue instead that what practices are sound varies widely over time, geography, and type of agricultural operation, and that there is disagreement among professionals over which practices should be followed. Therefore, plaintiffs assert, implementation of this requirement will be inherently arbitrary. But that argument actually supports the premise that sound practices are subject to many variable factors and that decisions regarding them must be made on an ad hoc basis. It is evident from plaintiffs' own argument that FmHA cannot be required by a court to publish a single set of sound practices. It is also evident that FmHA cannot be barred by a court from requiring that sound practices be followed. If plaintiffs' prediction is accurate, and incidents of this requirement being applied unfairly or arbitrarily do occur, then the individuals affected will be free to challenge those applications of the regulation. A pattern of abuse of this requirement, or of 7 C.F.R. § 1951.44(c)(3), could even serve as the basis for a class-wide challenge. The regulation itself, however, is not impermissible under the standards of 5 U.S.C. § 706(2)(A). This court will enter an order granting a summary judgment of dismissal of plaintiffs' seventh claim for relief, so far as that claim challenges 7 C.F.R. § 1951.44(c)(5).

The two eligibility requirements discussed immediately above were objected to in several of the comments contained in the administrative record. This court finds, however, that FmHA's decision to retain these requirements in the final rules despite these comments was a permissible policy decision rather than an arbitrary, capricious or extra-discretionary act.

■ Plaintiffs' ninth claim for relief challenges 7 C.F.R. §§ 1872.17(b)(5), 1955.-15(d)(2), and 1962.40(c). Section 1872.-17(b)(5) provides:

(5) *Multiple loans and loans secured by both real estate and chattels.* When a borrower is indebted to the FmHA for more than one type of FmHA loan, a thorough study should be made of each loan and the effect liquidation of one or more of the loans would have on any and all other loans. When liquidation of one or more FmHA loans secured by real estate is necessary and it will jeopardize the repayment of or the accomplishment of the purposes of the other FmHA loans, all FmHA loans should be liquidated. If a borrower has a loan(s) secured only by chattels *or* if a borrower has a loan(s) secured by both real estate and chattels, liquidation of real estate and chattel security will be started at the same time. Chattel security will be liquidated under Subpart A or [sic] Part 1962 of this chapter, except that when an account(s) secured by chattels only or by both chattels and real estate will be transferred, such transfer(s) will be accomplished in accordance with § 1872.18 of this subpart. When a farmer program loan borrower also has another FmHA loan secured by property which also serves as security for the farmer program loan, the non-farmer program loan will be accelerated at the same time the borrower is sent Form FmHA 1924–25.

The other regulations challenged refer to or rely on the above provision.

In their complaint plaintiffs assert that adoption of this rule was arbitrary, capricious and an abuse of discretion pursuant to 5 U.S.C. § 706(2)(A), because it will lead to anomalous and unfair results. They argue that under state law a borrower will typically have a substantial period of time in which to cure the delinquency on the real

estate loan that is in default, but will quickly be stripped of the chattels securing the simultaneously liquidated loan that is not in default. The most likely scenario would involve a farmer who is in default on an FmHA loan secured by real estate but who is current on another FmHA loan secured by the crops growing on that real estate. The farmer would lose the crops through foreclosure some time before the end of the redemption period for the real estate foreclosure. During that time the farmer would not receive the profits from the crops, which arguably could be used to cure or redeem the real estate loan.

Defendants point out that this rule has been in effect for twenty-seven years, and that plaintiffs' scenario is an unlikely one, as a borrower in the position described by plaintiffs is unlikely to redeem the real estate regardless of the disposition of the crops. They argue that simultaneous liquidation is a proper procedure for the protection of FmHA's security. Plaintiffs have not responded to defendants arguments, or presented any defense or support for this claim beyond the complaint itself. Plaintiffs have also not shown or attempted to show that application of this rule is contrary to the law of any state. If the law of a state forbids the procedure provided by section 1872.17(b)(5) plaintiffs are, of course, free to challenge the use of the procedure in that state. This court finds that the ninth claim as presented is a policy argument, rather than a legal challenge. This court will not and cannot substitute its judgment for that of the agency. FmHA is charged with protecting the security of its loans, and it is well within the discretion of the agency to enact this regulation in furtherance of that goal. No opposition to the retention of this policy can be found in the administrative record. This court will enter an order granting a summary judgment of dismissal of plaintiffs' ninth claim for relief.

█ Plaintiffs' eleventh claim for relief alleges that FmHA failed to comply with the publication and explanation requirements of 5 U.S.C. § 553 in adopting five provisions of the rules and three forms

used in implementing the rules. Forms FmHA 1924–14, 1924–25, and 1924–26 were not published with the proposed rules for comment. As noted above, this lack of publication was the subject of some criticism in the comments received. The comment submitted by the Center for Rural Affairs was particularly critical of this omission, and suggested that in the future the publication of proposed rules include the forms that will implement those rules. Since plaintiffs' tenth claim for relief is a challenge to the adequacy of these very forms, this suggestion would seem well made. Advance publication for comment could have resulted in better forms and less litigation. However, as this court has previously noted, these forms do not fall within the publication requirements of 5 U.S.C. § 553 because they are not "rules" under 5 U.S.C. § 551(4). *Coleman v. Block,* 632 F.Supp. 1005, 1015 (D.N.D. 1986). That forms are not rules is well recognized, and plaintiffs have apparently abandoned this claim. This court will enter an order granting a summary judgment of dismissal of plaintiffs' eleventh claim for relief, so far as that claim concerns forms FmHA 1924–14, 1924–25, and 1924–26.

Two of the provisions challenged for lack of publication have been subsequently altered or superseded, and plaintiffs state in their Response to Defendants' Motion for Summary Judgment that these subsequent actions have resolved their challenges to these passages.

█ The three remaining challenged provisions are now published at 7 C.F.R. §§ 1924.57(d)(1) and 1962.17(b). A detailed exposition of the provisions is unnecessary. Each challenged provision consists of a sentence or phrase that is included in the final version of the relevant subsection without having been published in the proposed rules. These provisions clarify or expand on the content of the subsection as published in the proposed rules.

5 U.S.C. § 553(b) provides in pertinent part:

(b) General notice of proposed rule making shall be published in the Federal Register.... The notice shall include—

.    .    .    .    .

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

It is evident from the text of the statute, and from simple logic, that an agency is not required to publish in the proposed rules the precise text of the final rules. This position is supported in the case law. *E.g. Daniel International Corporation v. Occupational Safety and Health Review Comm.*, 656 F.2d 925, 932 (4th Cir.1981). The three passages at issue are logical modifications of the proposed subsections, and do not change the basic character or purpose of the subsections, but rather make them more detailed and specific. The publication by FmHA of the proposed rules placed the public on notice that the entire scheme of FmHA's loan operations was being modified, and the eventual incorporation into the rules of the three phrases at issue was well within the borders of that notice. The lack of prior publication of these passages does not approach a violation of the publication requirement of 5 U.S.C. § 553(b)(3). It appears from plaintiffs' brief that their true quarrel is again not with the rules themselves, but with the alleged improper application of those rules. They of course remain free to challenge improper applications of these provisions by FmHA personnel.

■ FmHA made only cursory references to these changes or additions in its preface to the final rules. A failure to explain the basis and purpose of changes as minor as these, however, is not a violation of the concise general statement requirement of 5 U.S.C. § 553(c). It is evident that the changes were instituted not for any overarching policy reason, but simply to make the rules more detailed and specific.

For the above reasons, this court will enter an order granting a summary judgment of dismissal of plaintiffs' eleventh claim for relief.

In December of 1983, in an effort to comply with this court's preliminary injunction of November 14, 1983, FmHA promulgated a set of forms and procedures now referred to as the "pretermination pack-age." The pretermination package was used to accelerate delinquent FmHA debts until October, 1984, when they were superseded by the regulations now at issue. It is FmHA's policy that the borrowers whose loans were accelerated under the pretermination package, but who have not been finally foreclosed on, will not have their loans reaccelerated under the new procedures. In their twelfth claim for relief, plaintiffs challenge both the adoption of the pretermination package and the determination not to allow reacceleration.

On January 30, 1984, plaintiffs filed a Motion to Show Cause Why Defendants' Temporary Compliance Procedures Should Not be Cancelled by Court Order, challenging the pretermination package. This court entered an order on February 6, 1984, holding this motion in abeyance. The order stated that the motion was being held in abeyance because of the possibility that it would be rendered moot by the forthcoming permanent injunction, and provided that "if the motion is not rendered moot by the Court's ruling on the permanent injunction, plaintiffs are free to reassert the motion, whereupon defendants will have ten (10) days to respond." *Coleman v. Block,* A1–83–47, slip op. at 2, (D.N.D. Feb. 6, 1984) (Docket No. 117). Plaintiffs did not reassert the motion.

This court is sitting as a court of equity, and so the doctrine of laches is applicable. *Minnesota Mining and Manufacturing Co. v. Berwick Industries, Inc.,* 532 F.2d 330, 334 (3d Cir.1976). "Laches is an equitable doctrine which bars an action where a party's unexcused or unreasonable delay has prejudiced his adversary." *Ruiz v. Shelby County Sheriff's Department,* 725 F.2d 388, 393 (6th Cir.1984). "Laches cases proceed on the assumption that 'the party against whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned; and that because of the changing conditions or relations during this period of delay it would be an injustice to the

latter to permit him to now assert them.' " *Concerned About Trident v. Schlesinger*, 400 F.Supp. 454, 478 (D.D.C.1975) *cause remanded* 555 F.2d 817, *quoting Galliher v. Caldwell*, 145 U.S. 368, 372, 12 S.Ct. 873, 874, 36 L.Ed. 738 (1892). This is precisely what has occurred in this case. Plaintiffs knew immediately after the entry of this court's permanent injunction of February 17, 1984, that their motion had not been rendered moot, but instead of reasserting their motion, they, in the language of the law of equity, "slumbered on their rights." While plaintiffs slumbered, defendants used the pretermination package to accelerate, without challenge, the loans of thousands of borrowers. Plaintiffs cannot now ask a court of equity to require defendants to abandon these accelerations when they could have, and should have, challenged the procedures and forms used before the accelerations were accomplished. To so require would allow plaintiffs' unexcused delay to unjustly prejudice defendants. It could also unjustly prejudice the very borrowers whom counsel for plaintiffs seek to help. The personal upheaval that would result from an order setting aside the interim accelerations and foreclosures, and requiring that the borrowers have their loans accelerated for a second time, could well be an instance of good intentions producing harmful results. When some bad event has come to an end, there is much to be said for leaving the peace undisturbed, so that all concerned can proceed with their lives without further turmoil and anxiety, and put the past behind them.

Laches applies to delays in filing a complaint, not to delays in the course of litigation. *Boone v. Mechanical Specialties*, 609 F.2d 956, 958 (9th Cir.1979). This court considers that the filing of a supplemental complaint, particularly in a case of this magnitude and duration, has the same character as the filing of an initial complaint, and so the doctrine can be applied. This court will enter an order granting a motion of summary judgment of dismissal of plaintiffs' twelfth claim for relief.

The remaining four claims—eight, ten, thirteen, and fourteen—are not brought by plaintiffs under 5 U.S.C. § 706, but instead are brought under two provisions of the Fifth Amendment to the United States Constitution. Claims eight, ten, and thirteen allege violations of the due process clause, and claim fourteen alleges a violation of the equal protection clause. Claims thirteen and fourteen challenge the constitutionality of the pretermination package. This court will enter an order granting a summary judgment of dismissal of plaintiffs' thirteenth and fourteenth claims for relief, for the same reasons given above for the dismissal of the twelfth claim. It should be emphasized that this in no way constitutes an endorsement by this court of the pretermination package. The comment submitted by the Center for Rural Affairs was as sharply critical of the adequacy of those forms and procedures as are plaintiffs. Plaintiffs cannot, however, bootstrap a challenge to the pretermination package into a Supplemental Complaint that challenges the provisions that superseded it. Plaintiffs have never offered any excuse or explanation for delaying their opposition to the package until it was no longer in use, and had been used in thousands of accelerations. The principles of equity do not permit plaintiffs to force the burden caused by their delay onto the shoulders of FmHA.

Although plaintiffs do not cite 5 U.S.C. § 706 in their eighth and tenth claims for relief these claims could be treated as having been brought under 5 U.S.C. § 706(2)(B). 5 U.S.C. § 706 provides in pertinent part:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

    .      .      .      .      .

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

    .      .      .      .      .

(B) contrary to constitutional right, power, privilege, or immunity;

The standard of judicial review under this subsection is keener than that applied under the other subsections.

In setting aside the lower court's cursory rejection of Porter's constitutional claim, we note the possibility that the court may have relied on agency findings or deferred to agency rulings in making its decision. This too would be error. The intent of Congress in 5 U.S.C. § 706(2)(B) was that courts should make an independent assessment of a citizen's claim of constitutional right when reviewing agency decision-making.

*Porter v. Califano*, 592 F.2d 770, 780 (5th Cir.1979). The two claims could also be brought directly under the constitution, independent of 5 U.S.C. § 706(2)(B). 592 F.2d at 781. In either case, this court owes no deference to the determinations of the agency and is not limited in its review to the administrative record on which the actions were taken.

█ Plaintiffs' eighth claim for relief alleges that FmHA's simultaneous liquidation procedure, outlined above in the discussion of plaintiffs' ninth claim for relief, violates plaintiffs' due process rights in two respects. First, it is alleged that the terms of the regulation that authorizes a finding of jeopardization are too vague. Second, it is alleged that borrowers are not given sufficient notice when their loans are accelerated because of jeopardization.

7 C.F.R. § 1872.17(b)(5) provides in pertinent part:

(5) *Multiple loans and loans secured by both real estate and chattels.* When a borrower is indebted to the FmHA for more than one type of FmHA loan, a thorough study should be made of each loan and the effect liquidation of one or more of the loans would have on any and all other loans. When liquidation of one or more FmHA loans secured by real estate is necessary and it will jeopardize the repayment of or the accomplishment of the purposes of other FmHA loans, all FmHA loans should be liquidated.

Plaintiffs contend that this regulation does not sufficiently define the standards and procedures to be used in making the determination that a loan has been jeopardized. This court finds, however, that the regulation is sufficiently specific to permit judicial review of its implementation. If a borrower were to challenge an FmHA finding of jeopardization in court or on administrative appeal, the reviewing entity would be able to make a meaningful determination of whether the particular finding was in conformance with the regulation. This quality of reviewability is sufficient to negate a finding of a constitutional violation.

█ Plaintiffs contend in support of their second allegation of the unconstitutionality of claim eight that borrowers will not receive adequate notice when their loans are accelerated on the basis of jeopardization. This problem was addressed by this court in its permanent injunction in this case.

IT IS ORDERED

.    .    .    .    .

B. That the defendants, their agents, subordinates, and employees are enjoined from proceeding to liquidate, or to terminate the living and operating allowance previously determined in the administration of any existing loan, unless:

1. the defendants shall give any plaintiff against whom defendants propose to proceed at least 30 days notice:

a. That informs the borrower of his right to an informal hearing to contest the liquidation or termination and to establish eligibility for loan deferral pursuant to 1 U.S.C. § 1981a;

b. That provides the borrower with a statement that gives the reasons for the proposed liquidation or termination;

*Coleman v. Block*, 580 F.Supp. 194, 210 (D.N.D.1984). If any borrower should have a loan accelerated because of a finding that it is jeopardized, but is not given a notice clearly stating that the particular acceleration is based on a finding of jeopardization, providing the basis for that finding, and informing the borrower that the finding can be contested, then the borrow-

er's remedy is to bring a motion in this court to have FmHA held in contempt of this court's permanent injunction in this case.

This court will enter an order granting a summary judgment of dismissal of plaintiffs' eighth claim for relief.

▆▆ In their tenth claim for relief, plaintiffs assert that forms FmHA 1924–14, 1924–25, and 1924–26 do not meet the due process requirement of the fifth amendment. Copies of these three forms are attached to this order as an appendix. Notice of the impending governmental deprivation and the opportunity for a hearing on the deprivation is an essential element of due process. *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975). The timing and content of the notice depends on the competing interests involved in a particular case. *Id.* The notice given must inform interested parties of the hearing available to them, and enable them to adequately prepare for it. *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978). The form and content of the notice "must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

▆▆ Two countervailing factors must be considered in tailoring the due process notice to the circumstances of the present case. First, FmHA borrowers have available to them a number of provisions or programs intended to help see them through crises involving their loans. These options are bewildering both in number and complexity. Second, it has been asserted without contradiction that some seventy percent of FmHA borrowers have a twelfth grade education or less. Any notice will have to strike a reasonable balance between providing complete notice of the options available and ensuring that the notice given can be read and understood by its intended recipients.

Generally, the three FmHA forms embody a reasonable compromise of these two competing goals. Plaintiffs, however, have raised numerous objections to the forms. These objections will not be individually reviewed. The various assertions that the forms are in violation of this court's permanent injunction in this case do not address their constitutionality. The proper vehicle for these allegations would be a motion to have defendants held in contempt. This court neither encourages nor discourages the bringing of such a motion.

The various assertions that passages of the forms are difficult to comprehend have some merit, but this court is satisfied that the difficulty does not rise to the level of a constitutional violation. On the other hand, the "improvements" plaintiffs assert are constitutionally essential would greatly detract from the comprehensibility of the forms. For example, form FmHA 1924–14 is criticized in part as follows:

It fails to adequately describe the 1981a deferral in that it does not clearly state that both principal and interest payments may be deferred, nor does it state that the interest accruing during the deferral period will not be capitalized. This description does not give the borrower an indication of how the agency has construed the statutory criteria. The description does not provide the borrower with any indication of the types of circumstances FmHA will consider to be beyond the borrower's control, nor how long a temporary inability to pay can last, nor how living standards are to be determined. The form also fails to provide the borrower with notice of any of the various non-statutory conditions of deferral eligibility the agency has imposed by regulation. Form 1924–14 also fails to adequately describe the criteria for eligibility for the other loan servicing options available, nor does it describe how the borrwers' terms or rates of interest may change with rescheduling and reamortization. It does not describe how long a loan can be rescheduled or reamortized and does not describe how interest rates can be reduced through these actions.

This passage contains only some of the many additions proposed by plaintiffs. If these proposals were adopted, the result would be a booklet of intimidating length and technical detail, which would not likely be read, and even less likely understood, by many members of the plaintiff class. This court finds that the scheme of defendants, in which borrowers are given general notice of what kinds of options are available and directed to contact their county office with questions concerning them, is a constitutionally permissible, and even preferable, alternative. This court notes that FmHA incorporated many of the changes suggested in the comment submitted by the Center for Rural Affairs in its final versions of the forms.

▮ Plaintiffs have, however, identified several constitutional infirmities in the notice given by the forms. The three forms are sent together. FmHA 1924–25 notifies the borrower of the default and the impending adverse action, and directs the borrowers attention to various aspects of FmHA 1924–26. FmHA 1924–26 presents the borrower with a series of choices of which, if any, loan servicing options the borrower wishes to make use of. The form must be completed and returned within thirty days. FmHA 1924–14 provides further brief descriptions of the loan servicing options listed on FmHA 1924–26, and of some of the responsibilities of the borrower. It also states that the borrower can obtain additional information from the FmHA county supervisor. Forms FmHA 1924–14 and 1924–25 are notice forms, but FmHA 1924–26 is both a notice form and something more. Because the choices made by the borrower on this form are binding, and act to foreclose other options, this form is actually the first step in the application of the adverse action. The completion of, or the failure to complete, FmHA 1924–26 can be the decisive act in the liquidation process. Because of the potential impact of this form, and particularly because of the number and complexity of the options available, the notice given borrowers must be both clear and comprehensive. The weak link in the present notice system is the reference of borrowers to the county offices for further information.

Plaintiffs have submitted uncontradicted evidence that borrowers who seek additional information from county FmHA offices pursuant to the statement on FmHA 1924–14 receive inadequate or misleading information, or no information at all. They assert that FmHA has taken no substantial steps to ensure that FmHA county agents have current, uniform, comprehensive information with which to respond to requests for information. Further, it is possible that many borrowers will not read to the bottom of FmHA 1924–14, which is an only slightly helpful document.

Form FmHA 1924–26 must have added to it the statement, prominently displayed, that complete explanations of the various options listed on the form, and the implications or effects of choosing or rejecting them, are available at the local county FmHA office. FmHA must formulate and distribute to all of its county offices uniform and comprehensive, but also clear and readable, explanations of each of the options listed on FmHA 1924–26, including, but not necessarily limited to, the eligibility requirements, terms, restrictions, and benefits of each option, and the effect that choosing one option would have in foreclosing the availability of other options. These explanations will aid FmHA personnel in responding to borrowers' requests for information. These explanations must also be promptly provided to borrowers upon request, in lieu of or in addition to any oral explanation, at the option of the borrower. Each explanation must be clearly labelled to identify which option on FmHA 1924–26 it applies to. Complete sets of the explanations, serving in sum as a comprehensive guide to the completion of FmHA 1924–26, must be promptly provided to borrowers upon request. By way of example, the relevant explanations would include the availability of the various types of "debt settlement."

The combination of the concise information presented in the three forms mailed to the borrowers with the comprehensive supplementary information available upon re-

quest will provide due process notice well tailored to the unique circumstances of this case.

■ Plaintiffs have also identified a flaw in the mechanics of FmHA 1924–26. The form orders borrowers to choose options from any one, but only one, of four categories. A single FmHA 1924–26 form, however, can cover more than one loan, or more than one basis for adverse action on a single loan. As a result a borrower who, for example, is having a loan accelerated because of a default on the payments due and also because of an improper disposition of security, would confront a dilemma. The borrower would not be allowed to apply for loan servicing to cure the default and to also make restitution to cure the improper disposition. Defendants must re-draft FmHA 1924–26 to allow borrowers to make a separate election of options for each loan accelerated and for each reason given for each proposed adverse action. Providing a separate form for each loan or basis for adverse action would be one possible solution.

The above flaw in FmHA 1924–26 is not an instance of insufficient notice. It is instead a denial of due process in the form of an arbitrary deprivation of a protected property right. FmHA 1924–26 operates, in some circumstances, to deprive borrowers of protected interests without the opportunity for a hearing on the merits. The due process clause requires fundamental fairness in the operation of proceedings to deprive citizens of protected interests. *Lassiter v. Department of Social Services of Durham County, N.C.*, 452 U.S. 18, 24, 101 S.Ct. 2153, 2158, 68 L.Ed.2d 640 (1981) *reh. den.* 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed.2d 1023. The effect of FmHA 1924–26 is fundamentally unfair, and so the form must be altered to provide all borrowers with the full process due them.

Therefore IT IS ORDERED:

Plaintiffs' claims for relief numbers one, two, three, four, five, eight, nine, eleven, twelve, thirteen, and fourteen are hereby dismissed with prejudice to the bringing of another action for the same cause or causes.

Plaintiffs' seventh claim for relief is hereby dismissed with prejudice to the bringing of another action for the same cause or causes, except that it is not dismissed so far as it challenges the adoption of 7 C.F.R. § 1951.44(b)(5) for failure by FmHA to include with the publication of the rule a concise general statement of the basis and purpose of the rule.

Defendants are hereby ordered to submit to this court within thirty days of the filing of this order a concise general statement of the true basis and purpose of 7 C.F.R. § 1951.44(b)(5) as contemplated at the time the rule was promulgated.

Defendants are hereby ordered to amend form FmHA 1924–26 by adding to it, prominently displayed, a statement that explanations of the various options listed on the form, and the effect of choosing one of them, are available at the county FmHA office.

Defendants are hereby ordered to file with this court, and deliver to counsel for plaintiffs, within thirty days after the entry of this order, comprehensive, but also clear and readable, explanations of each of the options listed on FmHA 1924–26, including, but not necessarily limited to, the eligibility requirements, terms, restrictions, and benefits of each option, and the effect that choosing that option would have in foreclosing the availability of other options. Plaintiffs will have twenty days from the date of the filing of the explanations to file with this court, and deliver to counsel for defendants, any suggestions regarding the content of the explanations.

Defendants are hereby ordered to amend form FmHA 1924–26 to allow borrowers to make a separate election of options for each loan accelerated and for each reason given for each proposed action.

FmHA 1924–14
(Rev. 9/85)

*Position 3*

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

NOTICE

FARMER PROGRAM BORROWER SERVICING OPTIONS INCLUDING
DEFERRALS AND BORROWER RESPONSIBILITIES

**Servicing Options**

All borrowers are expected to repay their loans according to planned repayment schedules. However, sometimes borrowers will not be able to pay as scheduled. If this happens, you may inquire about the following servicing options:

I. Deferral:

An approved delay in making regularly scheduled payments. Such a delay may be granted if FmHA finds that, due to circumstances beyond your control, you are temporarily unable to continue making the scheduled payments on such loan(s) without unduly impairing your standard of living. A more detailed description is available at any FmHA Office.

II. Limited Resource Program:

The Farmers Home Administration (FmHA) has authority to make limited resource farm ownership and operating loans to qualified applicants.

The program provides credit at an interest rate which is lower than FmHA's regular interest rate.

In addition to making loans at reduced interest rate, borrowers with existing farm ownership and operating loans who qualify as limited resource operators may have their loans rewritten at the lower interest rate.

III. Consolidation:

Combining and rewriting similar type loans made for operating purposes at new rates and terms.

IV. Rescheduling:

Rewriting loans made for operating purposes at the interest rate of the original note or current loan rate, whichever is the lesser.

V. Reamortization:

Rewriting loans made for real estate purposes at the interest rate of the original note or current loan rate, whichever is the lesser.

VI. Subordination of the FmHA lien to the lien of another creditor.

VII. Restructuring the business and debt by selling a portion of your assets.

If you would like additional information regarding any of the above items and how to apply you should contact the FmHA County Supervisor. You will be asked to attend a conference with the FmHA County Supervisor and you must furnish the information necessary for FmHA to make a decision on your request. The County Supervisor can advise you of the information needed for a decision.

**FARMER PROGRAM BORROWER RESPONSIBILITIES**

Please read carefully the following summary of major FmHA requirements. Farmer Program insured borrowers should understand what the Farmers Home Administration (FmHA) expects of them and how FmHA can be of better service. This is *not* a complete list of all resonsibilities of an FmHA borrower; this highlights only *some* of those responsibilities.

**RESPONSIBILITIES CONSIST OF, BUT ARE NOT LIMITED TO, THE FOLLOWING:**

| | |
|---|---|
| **PAYMENTS:** | Payments are due as agreed upon in the note(s). It is essential that payments be made on time. Extra payments are encouraged whenever possible. |
| **SECURITY:** | The loan(s) is secured by a Financing Statement and Security Agreement and/ |

or a real estate mortgage or other security instruments (depending upon the type of loan or security). These instruments give FmHA a valid lien on crops, chattels, land, etc., as applicable.

**USE OF LOAN FUNDS:** FmHA loan funds will be used for the purpose(s) shown on the Farm and Home Plan or other plan of operation acceptable to FmHA, and/or Development Plan in cases of real estate improvements.

**RELEASES AND SALES:** The Form FmHA 1962-1, "Agreement For The Use of Proceeds/Release of Chattel Security," which you signed is the agreement between FmHA and you which explains what sales you plan to make, approximately when and to whom those sales will be made, and how the proceeds from those sales will be used. You must inform FmHA if you want to make any sales which are not listed on the form, if you want to sell to a purchaser not listed on the form, or if you make a sale and you receive an amount of proceeds different from the amount listed on the form. It may be a violation of Federal criminal law to make sales which have not been authorized on Form FmHA 1962-1 or to fail to account for sales proceeds.

**CHANGES IN OPERATION:** FmHA agreed to lend you money based on facts which you supplied about your operation. If any changes occur in your operation you should notify the FmHA County Supervisor at once.

**VIOLATION OF RESPONSIBILITIES:** Violation of any of the above responsibilities may result in denial of further FmHA assistance, and could cause your FmHA loan(s) to be accelerated.

*Position 3*

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

Form FmHA 1924-25
(Rev. 2-86)
Notice of Intent to Take Adverse Action
_____
*(Date)*

Dear:

As outlined below, your account with Farmers Home Administration (FmHA) is delinquent or there are other problems affecting your borrowing relationship with us.

We need to jointly attempt to work out a satisfactory solution to your credit problems through the various servicing options available. For your information and review, we have included with this material a copy of the FmHA notice entitled "Farmer Program Borrower Servicing Options Including Deferrals and Borrower Responsibilities" (Form FmHA 1924-14).

This notice requires a response from you within 30 days, using the attached Form FmHA 1924-26. That form offers you the opportunity to request consideration for a number of servicing options. Further details are provided below.

We have conducted a review of your Farmers Home Administration (FmHA) loan accounts and determined the following where checked:

☐ You are presently $_____ behind schedule on your FmHA loan installments which is a violation of your note and mortgage and/or security agreement.

☐ You have made unapproved disposition(s) of property that is covered by security instruments which secure your FmHA indebtedness. The property in question is _____,

*(describe property)*

☐ You have stopped farming or ranching which is a violation of your loan agreements.

☐ You have _____

*(insert the reason(s) for the proposed adverse action)*

If the above listed violation(s) is not corrected by one or more of the actions described in the attached Form FmHA 1924–26, FmHA will need to accelerate your FmHA debts and eventually foreclose on your real estate and/or chattels. This may include repossessing your chattels or in other ways proceeding against property you own in which FmHA has a security interest or terminating the release of sales proceeds.

You may, with regard to your Operating, Economic Emergency, Emergency, Farm Ownership, Soil and Water, Special Livestock, Economic Opportunity, Rural Housing for farm service buildings, and/or Recreation loan(s), apply for servicing options, including deferrals, that are explained in the enclosed Form FmHA 1924–14, "Notice-Farmer Program Borrower Servicing Options Including Deferrals and Borrower Responsibilities." Please read this form carefully.

If you wish to apply for any of the servicing options you must complete Part I of the enclosed Form FmHA 1924–26, sign the form, and return the form to the address listed on the letterhead of this notice within 30 days after you receive this notice. We will then arrange a conference with you to develop financial statements and farm operating plans which FmHA will use to make a determination on your request for servicing options. If you do not choose to attend the conference, you have the opportunity to appeal any adverse decision.

At the conference you will be given the opportunity to present information you believe will show you are eligible for the servicing option(s) you requested. FmHA will make a decision on your request based on the information submitted by you, the information in your FmHA case file and the plans developed by you and FmHA at the conference. Such a decision will be in writing and, if the decision is adverse, FmHA will explain how to appeal the decision and to have an appeal hearing. Such a hearing will cover both the denial of your request for servicing alternatives and other adverse actions FmHA intends to take against you as indicated above.

If you do not wish to request servicing options, you have the opportunity for a conference and to appeal the adverse action(s) FmHA intends to take. In this case, you should complete only Part II of Form FmHA 1924–26, sign the form and return it to the address shown in the letterhead of this notice within 30 days after you receive this notice. You may appear in person, with or without an attorney or other representative, to present your information. The hearing officer will be an FmHA employee who has not been previously involved in your case. The hearing officer will arrange a mutually convenient time and place for the appeal hearing.

Several methods of curing defaults or liquidating your FmHA loan accounts are available. If you prefer to use one of those methods listed in Part III (Curing Defaults) or Part IV (Liquidation Action) of Form FmHA 1924–26, check the appropriate box, sign the form and return it to the address listed in the letterhead of this notice within 30 days of receipt of this notice.

Please note that Form FmHA 1924–26 must be postmarked within 30 days of the day you received this notice. If you fail to respond to this notice by completing, signing and returning Form FmHA 1924–26 in the prescribed time, FmHA will need to accelerate your FmHA debts and eventually foreclose on your real estate and/or chattels without further notice or right of administrative appeal by you.

*(The following paragraph applies for individual borrowers only)*

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age *(provided that the applicant has the capacity to enter into a binding contract);* because all or part of the applicant's income is derived from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that adminis-

ters compliance with this law is the Federal Trade Commission, Equal Credit Opportunity, Washington, D.C. 20580.

Sincerely,

_____

FmHA County Supervisor

Enclosures:
Form FmHA 1924–14
Form FmHA 1924–26

*Position 4*

United States Department of Agriculture
Farmers Home Administration

FORM APPROVED
OMB NO. 0575–0111
Expiration date avail. on request.

Form FmHA 1924–26
(Rev. 2–86)
Borrower Acknowledgement of
Notice of Intent to Take
Adverse Action

_____
*(Date)*

County Supervisor, FmHA

This acknowledges that I(we) received your Notice of Intent to Take Adverse Action dated ____.

**(Complete Part I, II, III, or Part IV and Part V)**

---

I.   Servicing Actions
   I(we) request FmHA to consider the following servicing actions *(check one or more):*

A. _____ Rescheduling       E. _____ Limited Resource
B. _____ Reamortization      F. _____ Subordination
C. _____ Consolidation       G. _____ Restructuring the business and debt by selling
D. _____ Deferral                a portion of my(our) assets

I(we) understand that if, after I(we) attend a mandatory conference with FmHA and present necessary information, FmHA denies my(our) request, I(we) will be given the opportunity to appeal. If I(we) fail to attend the mandatory conference, I(we) will be given the opportunity to appeal the adverse action.

**(If you completed this part, proceed to Part V)**

---

II.  Appeal
   I(we) do not wish to apply for the servicing options in Part I above.  I(we) understand that I(we) may attend a conference and/or appeal FmHA's intended adverse action and I(we) wish to have the appeal hearing handled as follows:

*(check appropriate box)*

A. _____ I(we) request a conference with FmHA.  I(we) understand that if I(we) fail to schedule or attend this conference, I(we) may also request an appeal hearing *if* I(we) have indicated by checking box B, C or D below.

B. _____ I(we) request an appeal hearing and I(we) believe FmHA's intended action is wrong for the following reason(s):

I(we) am(are) enclosing the following information for the hearing officer's consideration *(itemize specific documents.)*

C. _____I(we) request an appeal hearing and I(we) will present information at the hearing which I(we) believe will prove FmHA's decision is incorrect.

> This information is to be collected by FmHA from the borrower in order to learn whether the borrower wants to apply for specific loan servicing options, to appeal FmHA's intended actions, to cure the default or to liquidate. The information is required so that FmHA understands what actions the borrower wishes to pursue. This statement is furnished pursuant to P.L. 96–511.

D. _____I(we) will not attend an appeal hearing but request the hearing officer to review the existing written record, and based on the review, determine whether FmHA's decision is correct.

E. _____I(we) do not want to appeal the intended action and waive my(our) right to do so.

**(If you completed this part, proceed to Part V)**

------------------------------------------------------------------------------------------------------------

III. Curing Defaults. *(Complete this only if you have checked none of the boxes in I or II above).*

I(we) do not wish to request a servicing option in Part I or to appeal the intended adverse action as allowed in Part II. I(we) wish to take the following action to correct the security agreement violations noted in Form FmHA 1924–25 and request a conference with you to discuss this action.

A. _____ Pay my(our) delinquent loan accounts current.

B. _____ Make restitution to FmHA for unauthorized disposition of security.

I will take this action within 60 days of the date this Form FmHA 1924–26 is postmarked. If I cannot accomplish this action within the 60 days, FmHA will proceed to take adverse action against me, and I will not be allowed to appeal the adverse action.

**(If you completed this part, proceed to Part V)**

------------------------------------------------------------------------------------------------------------

IV. Liquidation Actions. *(Complete this only if you have checked none of the boxes in I, II, or III above).*

I(we) do not wish to request a servicing option in Part I, appeal the adverse action as permitted in Part II, or correct the security agreement violations as permitted in Part III. I(we) wish to take the following action to liquidate my(our) FmHA accounts and request a conference with you to discuss this action.

A. _____ Sell my (our) security for cash.

B. _____ Convey my (our) security to FmHA.

C. _____ Transfer my (our) security to someone who will assume the FmHA debt.

D. _____ Refinance my (our) debt with another lender.

I will take this action within 120 days of the date this Form FmHA 1924–26 is postmarked. I understand that I may be considered for FmHA debt settlement should sale, transfer, or conveyance of secured property fail to satisfy my(our) entire FmHA debt. I understand that if I cannot accomplish this action within 120 days, FmHA will proceed to take adverse action and I will not be allowed to appeal that action.

**(Proceed to Part V)**

------------------------------------------------------------------------------------------------------------

V. Certification

I(we) hereby request one of the above actions. I(we) understand that if I(we) do not request any of the actions in Parts I, III, or IV or desire an appeal hearing in Part II, FmHA may proceed to take immediate action on my(our) loan accounts.

Sincerely,

_____
*(Signature of borrower)*

_____
*(Signature of borrower)*

## SUPPLEMENTAL MEMORANDUM and ORDER

Plaintiffs' supplemental complaint was filed on January 24, 1986. It presented fourteen claims for relief challenging various aspects of the new regulations and forms promulgated by FmHA to be used in taking adverse action against its borrowers. These new regulations and forms were adopted by FmHA in November, 1985, in order to comply with the terms of this court's preliminary and permanent injunctions in this case. *See Coleman v. Block*, 580 F.Supp. 192 (D.N.D.1983) and *Coleman v. Block*, 580 F.Supp. 194 (D.N.D. 1984). Defendants brought a motion for an order granting a summary judgment of dismissal of thirteen of the claims for relief, filed June 16, 1986. On May 7, 1987, this court entered an order dismissing eleven of the claims for relief, and granting in part and dismissing in part the remaining two. One of these two involved a procedural error and is not now at issue.

The other of the two, the tenth claim for relief, asserted that the forms used by FmHA to notify borrowers of impending adverse actions on their loans violated the due process clause of the Fifth Amendment to the United States Constitution in a number of ways. This court, in its order of May 7, 1987, found that two aspects of the notice procedure constituted denials of due process. Defendants were directed to take three actions that would begin the process of curing the flaws in the notice procedure.

Plaintiffs brought motions for a temporary restraining order and for an order to show cause why a preliminary injunction should not be issued on May 12, 1987. By these motions plaintiffs sought sweeping retroactive relief, which would have effectively undone all the adverse actions taken against borrowers by FmHA using the defective forms. These motions were based on this court's finding in the May 7 order that the forms were in violation of the Constitution. On May 15, 1987, this court entered an order denying the motion for a temporary restraining order and requiring defendants to show cause why a preliminary injunction should not be entered. On that same day, plaintiffs brought an alternative motion to have the order of May 7 amended to accomplish the same retroactive relief sought by the previous two motions. The hearing on the order to show cause and on the motion to amend the order was held on May 21, 1987.

This court deliberately chose not to grant retroactive relief in its order of May 7, and instead entered an order aimed only at a prompt cure of the flaws in the notice process. This course of action was chosen after consideration of the mixed beneficial and detrimental impact retroactive relief would have on the plaintiff class, and, to a lesser extent, its disruption of FmHA's operations. Plaintiffs now seek to persuade this court that retroactive relief would lead to greater benefits and fewer harms to the class than this court had previously contemplated; and that this court's decision not to grant retroactive relief was therefore erroneous. The appropriate vehicle for this attempt is the motion to amend the verdict brought pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. A preliminary injunction will not be issued.

This court now concludes that its decision not to grant any retroactive relief was an error. When the order of May 7 was drafted, this court did not give sufficient consideration to the fact that the FmHA borrowers who have received the faulty notice forms can be grouped into several categories defined by the stages of the adverse action process. This failure resulted in some borrowers not receiving the appropriate remedy for FmHA's violation of their constitutional rights to due process. Retroactive relief will have a different impact on borrowers in the early stages of the process than it will on borrowers in the later stages of the process. The standards for application of retroactive relief are most properly applied in turn to each of these categories of borrowers, rather than

to all the notified borrowers as an undifferentiated group.

The three part standard governing the application of retroactive relief was enunciated by the United States Supreme Court in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see, *e.g., Hanover Shoe v. United Shoe Machinery Corp., supra,* [392 U.S. 481] at 496, [88 S.Ct. 2224 at 2233, 20 L.Ed.2d 131] or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, *e.g.,. Allen v. State Board of Elections, supra,* [393 U.S. 544] at 572 [89 S.Ct. 817, at 835, 22 L.Ed.2d 1]. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Linkletter v. Walker, supra,* [381 U.S. 618] at 629 [85 S.Ct. 1731 at 1738, 14 L.Ed.2d 601]. Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding on nonretroactivity." *Cipriano v. City of Houma, supra,* [395 U.S. 701] at 706 [89 S.Ct. 1897, at 1900, 23 L.Ed.2d 647].

404 U.S. at 106–107, 92 S.Ct. at 355.

■■■ As is often true in cases involving due process issues, there was no clear precedent rendering the result ·in this case obvious or predictable with certainty. Further, this court had previously ruled in its order denying a preliminary injunction in this case that plaintiffs' due process challenge to the forms was not likely to succeed on its merits. *Coleman v. Block,* 632 F.Supp. 1005 (D.N.D.1986). This preliminary ruling was not, as defendants argue, binding precedent that was overruled by this court's order of May 7; and they had

no legal basis for assuming that it foreclosed the possibility of a finding of unconstitutionality. It did, however, contribute to the uncertainty inherent in any due process claim of first impression, thus satisfying the first element of the three part standard.

■■■ Application of the balancing tests mandated by the second and third elements of the standard must take into consideration the different circumstances of the borrowers who are in different stages of the adverse action process. The borrowers affected can be divided into three broad groups. The first group consists of those borrowers who have received the faulty notice forms, but who have not yet had their loans accelerated by FmHA. It appears that there are approximately 65,000 borrowers in this category. These borrowers are in various stages of pre-acceleration negotiations, hearings and appeals. The second group consists of those borrowers who have received the faulty forms and have subsequently had their loans accelerated, and so are ineligible for security releases for farm and family expenses, but who have not yet lost the title to their property. It appears that there are approximately 13,000 borrowers in this category. This group includes borrowers who have had foreclosure actions initiated against them, but who still hold title to their property. The third group consists of those borrowers who have received the faulty forms and have subsequently lost the title to their former property, regardless of whether they remain on the farm. There may be approximately 1,000 borrowers in this category. This group includes borrowers who have lost the title to their property through any transaction or legal process.

The purpose of the May 7 order was to ensure that class members would receive the full process due them in the course of adverse actions taken against them by FmHA. This purpose would be furthered by requiring that FmHA renotify the borrowers in the first of the three categories described above. The 65,000 borrowers in that group comprise a pool of borrowers

who received defective notice that is sufficient to occupy FmHA's acceleration and foreclosure resources for some time to come. Unless a new notice is given, the impact of the May 7 order will be effectively suspended until that pool is depleted. Unless retroactive relief is extended to them, the class members in the first group will be denied any effective relief by the May 7 order.

Few, if any, of the borrowers in this first group would be adversely affected by a grant of retroactive relief to them. Any individual who did not wish to take advantage of the opportunity to begin the pre-acceleration process anew could so indicate in response to the new notice of intent to take adverse action. Renotification of these borrowers will burden FmHA's operation and budget, but this burden is outweighed by the benefit of providing constitutionally sound notice to this large pool of borrowers who have not yet had their operations seriously disrupted by the flawed adverse action process. This court will enter an order: (1) barring FmHA from accelerating the loan of any class member of the first group as of May 7, 1987, without first providing the class member with the set of notice forms to be developed in accordance with this court's order of May 7, 1987; and (2) declaring that the notices, and procedures taken subsequent to the prior defective notices, as to the class members in the first group, are void.

█ The purpose of the May 7 order would also be advanced by extending retroactive relief to the third group of borrowers described above.' The inequitable results of such relief would, however, outweigh the benefits. This court will not reopen the wounds of those individuals for whom the legal process has been completed. As this court observed in its order of May 7 when some bad event has come to an end, there is much to be said for leaving the peace undisturbed, so that all concerned can proceed with their lives without further turmoil and anxiety, and put the past behind them. Those individuals who have the desire to renew their struggles, and believe they can prove actual damages

resulting from the constitutional infirmities of the notice given them are, of course, free to pursue litigation in their local courts.

█ This court is troubled by the problems posed by those borrowers who fall into the second group described above. Applying the second and third tests of the *Chevron* standard to the borrowers in the first and third groups yields straightforward conclusions regarding the propriety of retroactive relief for the members of those groups. There are two decisive moments in the adverse action process following notification. The first is acceleration of the loan. Upon acceleration, the borrower loses the statutory entitlement to security releases for farm operating and family living expenses, and is subject to the confiscation of other government payments by FmHA. The second is the loss of title to the security. At that time the borrower loses the legal right to remain on the land and operate it as a farm. The borrowers in the first group have not reached either of these turning points. Renotifying these borrowers will not involve the reversal of any prior loss of financial or legal interests, and will not raise the difficult issue of monetary reparations. The inconvenience to FmHA of having to do again the various hearings, appeals, and determinations that some of these borrowers have undergone is a fair price to pay for having this large pool of class members processed in an entirely constitutional manner. FmHA can implement this administrative fresh start internally.

It is equally clear to this court that the *Chevron* standard's two balancing tests prohibit the extension of retroactive relief to the borrowers in the third group. Even putting aside the very serious difficulties involved in reversing these borrower's loss of financial and legal interests, the uncertain additional furtherance of the goals of the May 7 order is far outweighed by the potential disruption of the lives of many of these borrowers. This court will not unilaterally decide for these individuals that they should be pulled back to the beginning of a difficult ordeal, and will

instead leave them to evaluate their own legal interests and personal desires.

For the second group, by contrast, the tipping of the scales is a finer matter. These borrowers have suffered the effects of having their living and operating releases terminated, and in some cases, of having their other government payments confiscated. This court, however, cannot know how many of these borrowers have suffered actual damages as a result of the constitutional flaws in the notice process. Some of the borrowers may have been fully informed of the various options open to them despite the flaws. Some may not have been adversely affected by the binding choices required by FmHA Form 1924–26. Some may have been in such serious financial difficulty that no available program could keep them on the farm. The number of borrowers in the second group who would not have been accelerated had the notice process not been flawed is not known.

Against this weighty but uncertain interest must be balanced the heavy financial cost and disruption of activity that reversing the acceleration of these borrower's loans would inflict on FmHA, and the resulting impairment of its ability to serve the members of the class. It is also possible that at this stage of the adverse action process there are borrowers who would prefer not to have this court return them to square one.

This court concludes that the remedy for the borrowers in this group must be tailored to assist the individuals actually harmed by the unconstitutional aspects of the notice of intent to take adverse action. The price of a blanket reversal of acceleration is too high to pay when we sweep those who have not been actually harmed along with those who have. Accordingly, this court will enter an order enjoining FmHA from foreclosing on the loans of the borrowers in the second group. This injunction will terminate thirty (30) days after this court determines that the corrected notice forms and explanations of options mandated by the May 7 order are available in all FmHA offices. This injunction will not require FmHA to reverse the acceleration of the loans of the members of the second group, or to restore security releases or refrain from confiscating government payments. It will maintain the status quo of May 7, 1987, until the accelerated borrowers can make a determination of whether to proceed with their own actions against FmHA. This will allow those borrowers who did not in fact learn of the options available to them that might have benefitted them, or who had a potentially beneficial option denied to them by the binding nature of the defective form 1924–26 election, and who would not have otherwise been accelerated, to recover for that harm. This court recognizes that in the absence of the security releases and other government payments many of these borrowers will suffer great hardship, but this remedy is as far as this court is permitted to go under the *Chevron* balancing tests.

IT IS ORDERED:

1.  As to any class member who received the defective notice of intent to take adverse action, but whose loan or loans had not been accelerated before May 7, 1987, FmHA is enjoined from accelerating such loans without first providing to that class member a set of the corrected notice forms required by this court's order of May 7, 1987, and without making available to that class member services as provided for in those corrected forms.

2.  As to any class member whose loan or loans were accelerated on or between May 7, 1987, and the date of the entry of this order, FmHA is hereby ordered to reverse such acceleration, and treat such class member as provided in the paragraph numbered 1, above.

3.  FmHA is hereby enjoined from initiating foreclosure or proceeding further with foreclosure or execution on any loan accelerated before May 7, 1987, until 30 days after the court determines that the corrected forms and explanations required by this

court's order of May 7, 1987, are available in FmHA county offices.